Argued and submitted December 4, 1998, affirmed February 10, 1999

MEDIA ART COMPANY,
*Petitioner,*

*v.*

CITY OF GATES,
*Respondent.*

(LUBA 97-196; CA A103814)

974 P2d 249

D. Daniel Chandler argued the cause for petitioner. With him on the brief were Andrew H. Stamp and O'Donnell Ramis Crew Corrigan & Bachrach.

Vance M. Croney argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Petitioner seeks review of a decision by the Land Use Board of Appeals (LUBA) in which LUBA upheld a decision by the City of Gates to deny petitioner a building permit for a billboard sign structure. Petitioner contends that the city interpreted its zoning code in a manner that violated its right to free expression under Article I, section 8, of the Oregon Constitution, and the First Amendment to the United States Constitution.[1] We conclude that, because the decision by the city was not based on its perception of the sign's content, the zoning law as applied to petitioner was not unconstitutional.

We take the facts from LUBA's final opinion and order:

"Petitioner sought approval to construct an off-premise outdoor advertising sign, or billboard, on a parcel within the city limits [of Gates]. The subject property, adjacent to State Highway 22, is zoned Light Industrial (IL) and contains an existing commercial structure. The proposed billboard is unrelated to the use of the existing commercial structure.

"Off-premise advertising signs along state highways are regulated under the Oregon Motorist Information Act (OMIA), codified at ORS 377.700 to 377.840. The OMIA generally prohibits the installation of any off-premise outdoor advertising sign visible to motorists traveling on the state highways, unless it complies with the OMIA.[2] Pursuant to ORS 377.725, ODOT requires parties seeking to construct a billboard along state highways to submit to ODOT a permit application titled 'Off-Premises Outdoor

---

[1] Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

The First Amendment to the United States Constitution provides, in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press[.]"

[2] Although the OMIA generally prohibits the construction of new outdoor advertising signs, there is an exception for the relocation of billboards that existed before June 12, 1975, so long as the new location is within 100 miles of the existing location. ORS 377.767. Petitioner's application was for such a relocation.

Advertising Sign.' In addition to obtaining approval from ODOT, ORS 377.723 requires the applicant to obtain an affidavit from the local zoning authority certifying that the applicant's outdoor advertising sign complies with all applicable local ordinances.

"Petitioner submitted the ODOT off-premise outdoor advertising sign permit application to the city on August 7, 1997, and the city conducted a public hearing December 17, 1997. The city does not have a sign ordinance or comprehensive plan policy that addresses the siting of a billboard structure. Instead, the city evaluated the application for compliance with Gates Zoning Ordinance (GZO) 17.020,[3] which lists uses allowed in the IL zone, to ascertain

---

[3] GZO 17.020 provides:

"Permitted Uses. Within the IL zone, no building, structure or premise shall be used, arranged or designed to be used, erected, structurally altered, or enlarged except for the following uses and activities:

"(A) Dwelling for caretaker or watchman.

"(B) Commercial activities:

"1. Lumber yard, building material supply.

"2. Special trade contractor facilities for plumbing, roofing, sheet metal, electrical, heating and air-conditioning, tents and awnings, cabinet and carpentry, and similar construction and construction related activities. Permitted activities include the establishment of an office, storage of equipment and materials, and fabrication and repair.

"3. Automotive repair and maintenance, including electric motor repair, paint and body shop, tire recapping and similar automotive repair facilities.

"4. Repair and maintenance activities for other vehicles, such as motorcycles, aircraft, boats, recreational vehicles, and trucks.

"5. Tractor, farm equipment, heavy construction equipment, and logging equipment, rental, sales and service.

"6. Welding and blacksmith shop.

"7. Freight terminals, including loading docks, storage, warehousing and wholesale distribution, cold storage lockers and similar personal storage facilities such as mini-storage warehouses.

"(C) Industrial uses:

"1. Beverage bottling facility, including warehousing and distribution.

"2. Feed and seed facilities, including grain elevators and storage.

"3. Dairy products manufacturing, such as butter, milk cheese and ice cream.

"4. Machine shop, and sales, service and repair of machinery.

"5. Food processing, including canning, freezing, drying and similar food processing and preserving.

"(D) Uses clearly accessory and subordinate to the above."

whether the proposed structure complies with the city's zoning code.

"Following a public hearing on the application, the city determined that GZO 17.020 permits billboards or signs in the IL zone only where they are 'clearly accessory and sub-ordinate'[4] to permitted uses on the property. The city then examined petitioner's application to see if the proposed use is 'accessory and subordinate' to the permitted use on the parcel. Relying in part on the fact that petitioner's application was for an 'off-premise outdoor advertising sign,' the city concluded the proposed billboard would not be an accessory or subordinate use to the main use on the premises, and thus the petitioner's proposed use did not comply with GZO 17.020."

■    Petitioner appealed the city's decision to LUBA, contending that the city's application of the zoning ordinances was a constitutionally impermissible restriction on expression. On September 22, 1998, LUBA issued a final opinion and order in which it rejected all of petitioner's constitutional arguments and upheld the city's denial of a permit. Petitioner seeks review, claiming that the zoning ordinance violates Article I, section 8, of the Oregon Constitution, because (1) it is directed at the content of expression and fits within no historical exception to the right to free expression; (2) it is overbroad; and (3) as applied to petitioner, it unlawfully restricts expression. Petitioner also argues that the zoning ordinance violates the First Amendment to the United States Constitution because (1) it impermissibly favors commercial expression over noncommercial expression; (2) there is not a "reasonable fit" between the purpose for the regulation and the means chosen to accomplish that purpose; and (3) the ordinance is an impermissible prior restraint on expression.[5]

---

[4] GZO 2.020 defines "accessory use" as "a use incidental, appropriate and subordinate to the main use of the parcel, lot or building."

[5] The city attempts to avoid the constitutional inquiry by arguing that its decision was nothing more than a land use decision involving its interpretation of its own code. As such, it argues, that decision is entitled to deference unless it is "clearly wrong." *See Clark v. Jackson County*, 313 Or 508, 514-15, 836 P2d 710 (1992). We disagree. Although the ordinance at issue is not directed at expression, in this case it has been applied by the city in a manner that implicates expression. Accordingly, petitioner's constitutional arguments must be addressed.

■ ■    We begin with petitioner's state law arguments. *State v. Plowman*, 314 Or 157, 160, 838 P2d 558 (1992), *cert den* 508 US 974, 113 S Ct 2967, 125 L Ed 2d 666 (1993). Petitioner first argues that the zoning ordinance is directed at the content of expression and, therefore, is invalid unless it comes within an historical exception to the constitutional ban on such laws. *See State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982). We disagree. The ordinance, as written, is a land use regulation that makes no reference whatsoever, either by text or context, to expression. Accordingly, petitioner's argument that the ordinance is presumptively invalid is unavailing. The same is true for petitioner's second argument, which is that the ordinance, although not specifically addressed at expression, seeks to prevent a specific harm in a way that directly implicates expression. *See id.* at 417-18. On its face, the ordinance does not address any specific harm that itself implicates expression—as a land use regulation, it merely informs prospective builders and others what types of structures will be permitted in the light industrial zone. Unlike the zoning ordinance addressed in *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), it is possible to enforce the Gates ordinance without implicating expression. Thus, we are left with petitioner's third argument, that the ordinance, *as applied to petitioner*, unconstitutionally interferes with petitioner's right to free expression. *See State v. Robertson*, 293 Or at 417.

■    The difficulty for petitioner here is that, in its application to petitioner's case, there is no qualitative difference between the city's ban on billboards that are not connected to the approved uses in the light industrial zone and the "on-premises/off-premises" distinction made by OMIA, which this court recently upheld in *Outdoor Media Dimensions Inc. v. State of Oregon*, 150 Or App 106, 945 P2d 614 (1997), *rev allowed* 326 Or 627 (1998).

In *Outdoor Media,* we concluded that, even though OMIA distinguished between those signs that advertised goods, products, services, or facilities sold, manufactured, distributed, or located *on* the premises where the sign was located and those that advertised goods, products, services, or facilities sold, manufactured, distributed or located *off* the premises where the sign was located, that distinction was not

content based and, therefore, did not run afoul of Article I, section 8. We reached that conclusion by reasoning that

> "[e]xempting billboards that advertise on-premises activity, while not similarly exempting those advertising off-premises activity, is not a *content*-based distinction. Although a billboard's *message* must be evaluated to determine whether it relates to an activity on or off the premises, it is not the content, subject or viewpoint of that message that determines whether a permit is required."

*Id.* at 117.

In this case, petitioner had applied for a building permit in conjunction with its OMIA application for an "outdoor advertising sign." ORS 377.710(22) defines an "outdoor advertising sign" as a sign that advertises "goods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located" or "facilities not located on the premises on which the sign is located." Hence, by definition, an outdoor advertising sign is an off-premises sign. Because the city had no sign code, it referred to its zoning code to determine whether the sign should be permitted. The city then concluded that, because the sign did not fit into a listed category and was not a use incidental, appropriate and subordinate to one of the listed uses, the sign was not permissible under the ordinance. Petitioner argues that the city's analysis required an impermissible inquiry into the content of the sign in order to determine whether the sign was "incidental, appropriate and subordinate" to one of the listed uses. We disagree. The inquiry undertaken by the city was necessarily the same as the on-premises/off-premises inquiry required by OMIA and approved by this court in *Outdoor Media* and, therefore, did not violate Article I, section 8.

■ Petitioner argues that there is a difference, however, between the city's application of its zoning code and OMIA, in that the ordinance impermissibly distinguishes between commercial and noncommercial expression. We are not persuaded. The city's inquiry was not into the commercial or noncommercial aspect of the proposed billboard, but, rather, into the billboard's relationship to the premises on which it was proposed to be situated. Although it is indeed likely that

most signs that would be considered incidental, appropriate and subordinate to uses permitted in a light industrial zone would be commercial in nature, it is possible that some noncommercial signs would also be permitted under the city's analysis. Because the ordinance itself makes no distinction between commercial and noncommercial expression, it is only as the ordinance has been applied to petitioner that we can determine whether an impermissible distinction has been made. Under the circumstances of this case, we cannot say that that has happened.[6]

Having disposed of petitioner's state law arguments, we turn to the First Amendment. Petitioner first argues that the ordinance impermissibly favors commercial over noncommercial speech. This argument fails for the same reasons that it failed in petitioner's state law challenge, and we need not repeat the analysis. Next, petitioner argues that, because the city could have interpreted the ordinance in a content-neutral fashion but chose not to, the city was required to demonstrate a "reasonable fit" between the ordinance's restriction on expression and the ends that the ordinance was designed to achieve. Again, our earlier conclusion that the city's application of the ordinance was *not* based on the content of the proposed billboard disposes of that argument. Thus, we are left with petitioner's final argument, which is that the ordinance is an impermissible prior restraint on expression.

■     Petitioner argues that GZO 17.020, as applied by the city, serves as a licensing requirement for billboards. " '[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional.' " *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F3d 814, 818 (9th Cir 1996), *cert den*

---

[6] On review, petitioner argues that the city's interpretation of the ordinance is constitutionally invalid because, unlike OMIA, the city's ordinance does not make an exception for political expression. LUBA noted in its opinion that it did not address that issue because it was not raised. Because petitioner did not ask LUBA to address that issue, we will not address it for the first time on appeal. Moreover, because petitioner, when first seeking approval for the billboard, informed the Gates City Council that, "as per the terms of Media Arts lease, there would be no alcohol, tobacco or political advertisements[,]" we cannot say that the ordinance, as applied to petitioner, infringed on political expression.

____ US ____ , 118 S Ct 294, 139 L Ed 2d 227 (1997) (quoting *Shuttlesworth v. City of Birmingham*, 394 US 147, 150-51, 89 S Ct 935, 22 L Ed 2d 162 (1969)). Petitioner contends that the zoning ordinance lacks such standards. Specifically, petitioner argues that, because the city's land use code allows the city recorder to permit land use that is "in general keeping" with listed uses, GZO 14.030, the city recorder may exercise unbridled discretion in determining what billboard content he or she will allow. We disagree. The city recorder's inquiry into permissible secondary uses is factually and legally circumscribed by the narrow list of permitted uses in the light industrial zone. The ordinance does not allow the city recorder to base his or her decision on a subjective determination of what those uses might be. Consequently, it is not an inherently subjective inquiry like the one addressed in *Desert Outdoor Advertising*, 103 F3d 814, where the challenged regulation allowed the city to approve a sign permit only if the proposed sign "will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the aesthetic quality of the community or surrounding land uses." *Id.* at 817. Accordingly, we conclude that, because the zoning ordinance does not make petitioner's "enjoyment of a constitutional right contingent upon the uncontrolled will of an official[,]" *FW/PBS, Inc. v. Dallas*, 493 US 215, 226, 110 S Ct 596, 107 L Ed 2d 603 (1990), it is not an unconstitutional prior restraint.

Affirmed.