Argued and submitted October 20, 2000, reversed July 11, 2001

Michael R. VILLANUEVA, Ph.D.,
*Petitioner,*

*v.*

BOARD OF PSYCHOLOGIST EXAMINERS,
*Respondent.*

97-09; A108093

27 P3d 1100

Michael E. Farnell argued the cause for petitioner. With him on the briefs was Hagen, Dye, Hirschy & DiLorenzo.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The Board of Psychologist Examiners reprimanded petitioner and fined him $1,000 for treating a minor child without the custodial parent's consent. The Board concluded that petitioner's conduct violated the American Psychological Association's (APA) Ethical Principle 4.02.[1] On review, petitioner argues that the Board's notice of proposed disciplinary action failed to comply with ORS 183.415(2)(c) because it did not allege that he had violated Principle 4.02 but instead alleged that he had violated six other ethical principles. Petitioner also argues that the Board's interpretation of Principle 4.02, which essentially imposed a strict liability standard on psychologists, was so unforeseeable as to render the rule unconstitutionally vague. We agree with petitioner's first argument and reverse.

Petitioner is a clinical psychologist in Medford. This case arises out of his treatment of a nine-year-old patient (child) whose parents were divorced. Under the terms of the dissolution judgment, mother was awarded custody of child, subject to father's visitation rights. In 1995, mother and child moved to California, and child periodically returned to Oregon to visit father. Later that year, a psychologist in California diagnosed child with attention deficit hyperactivity disorder, and child began taking Ritalin. After learning of the diagnosis, father sought to obtain a second opinion while child was in Oregon. He took child to a neurologist, Dr. Michael Narus, who referred father and child to petitioner.

Father explained to petitioner that he and mother were divorced and that mother had legal custody of child. Father also said that the dissolution judgment gave him authority to participate in decisions regarding child's medical

---

[1] Under ORS 675.110(12), the Board has authority to "formulate a code of professional conduct for the practice of psychology" and, under ORS 675.070(1) and (2)(i), to discipline psychologists who violate that code. Under that authority, the Board has adopted the APA's Ethical Principles of Psychologists and Code of Conduct. The ethical rule at issue in this case, Principle 4.02, governs "informed consent" to therapy and provides, in the case of a person legally incapable of giving consent, that psychologists should obtain consent from "a legally authorized person, if such substitute consent is permissible by law."

care and that, in any event, mother was aware of the examination and approved of it.

Petitioner proceeded with the examination, after which he sent a written report to Narus detailing his observations and opinions. In the report, petitioner stated that mother "approves of this exam" and that "father has retained rights to participate in medical decision making." Petitioner also noted child's mental health history, stating that child had a history of trauma, suffered seizures at birth, and that "[t]here is a history of affective disturbance (maternal)." Petitioner tested child for learning disabilities and determined that "[child] does have a significant learning problem and is behind his age peers, despite better than average intellect." Petitioner observed that child appeared somewhat immature and fidgety for child's age. The report concluded with petitioner's "impression" that child suffered from verbal learning disabilities and from attention deficit disorder and that medication was "not unreasonable." The record indicates that petitioner's professional relationship with father and child ended after the evaluation.

Over one year later, father sought to obtain custody of child and had petitioner subpoenaed to testify at the hearing, presumably in an effort to use the contents of petitioner's report as evidence that child's interests would be better served if father were awarded custody. After the hearing and after learning of the contents of petitioner's report, mother wrote to petitioner complaining about his examination of child. Mother also filed a complaint against petitioner with the Board, which included a copy of her letter to petitioner. Mother's complaint was based largely on what she perceived to be false statements or inaccuracies in the report. In particular, she claimed that the statement, "[mother] approves of this exam," was false and stated that she never would have approved of the testing because child had already undergone testing in California. She also took issue with petitioner's statement regarding a history of "affective disturbance," demanding a "full explanation of what you mean by that statement and what professional source you gleaned that information from." Mother concluded, "[Petitioner's] files on my son are a permanent part of his life and at this time they have serious misinformation in them."

The Board sent petitioner a letter dated July 11, 1997, in which the Board notified petitioner of mother's complaint. Attached to the letter was a "Summary of Allegations," which was accompanied by a list of ethical principles that petitioner may have violated if mother's allegations were proven true. The first allegation was that petitioner erroneously stated that mother approved of the exam; according to the Board, "such an allegation may represent a violation of Ethical Principle 1.21(a)."[2] The second allegation was that the report incorrectly recited that "[t]here is a history of affective disturbance (maternal)" because there was "no affective disturbance on [mother's] side of the family." The letter stated that such a misstatement would violate Principles 1.06, 1.14, 2.01(b), and 7.02(b).[3] Finally, the Board noted that, in mother's opinion, petitioner "ha[s] been remiss in [his] professional responsibility in that [he] did not respond to her telephone calls or [to] a certified letter sent to [him]," which may have constituted a violation of Principle 7.06.[4]

On March 31, 1998, the Board sent petitioner a Proposed Notice of Disciplinary Action, in which the Board "propose[d] to take disciplinary action against the license to practice as a psychologist of [petitioner] for violations of the December 1992 Ethical Principles of Psychologists and Code of Conduct." The Board's notice set out the following allegations:

"1.1 [Mother] is the full custodial parent of [child], a nine year-old boy, who was referred to [petitioner] for a psychological evaluation at the request of [child's] father. It is alleged that [mother] never consented to this evaluation

---

[2] Principle 1.21 states that, when a psychologist agrees to perform services "at the request of a third party," the psychologist should clarify the nature of the relationship with each party, including the role of confidentiality.

[3] Principle 1.06 states that psychologists should rely on scientifically and professionally derived knowledge in reaching conclusions. Principle 1.14 states that psychologists should take reasonable steps to minimize potential harm to their patients or clients. Principle 2.01(b) states that psychologists should base their assessments on information sufficient to provide appropriate substantiation for their findings. Somewhat similarly, Principle 7.02 requires psychologists to substantiate their "forensic" assessments adequately.

[4] Principle 7.06 states that psychologists should, when "performing forensic roles," become reasonably familiar with the rules governing their roles, including the "requirements of the court system," and attempt to resolve possible conflicts between these rules and their ethical obligations in a responsible manner.

and had no advance knowledge of it, nor would she have given consent since her son had recently been evaluated twice the previous October.

"1.2 [Petitioner's] evaluation of [child] dated January 9, 1996, states '[t]here is a history of affective disturbance (maternal)'. [Mother] reports there is no affective disturbance on her side of the family and she strongly objects to inclusion of such a statement without verification, and most appropriately, through interview with her.

"1.3 It is alleged that [petitioner] has been remiss in his professional responsibility in that [petitioner] did not respond to telephone calls made to [petitioner] by [mother] in April of 1997, and that [petitioner] did not respond to a certified letter sent to [petitioner] by [mother] in March 1997.

"* * * * *

"The Board alleges that the acts and conduct of [petitioner] * * * constitutes [sic] violations of Ethical Principles 1.21(a); 1.06; 1.14; 2.01(b); 7.02(b) and 7.06. Therefore, the Board proposes to:

"2.1 Issue a Letter of Reprimand and assess a civil penalty of $1,000 against [petitioner]."

On April 20, 1998, petitioner filed an answer, arguing that none of the Ethical Principles cited by the Board— Principles 1.21(a), 1.06, 1.14, 2.01(b), 7.02(b), and 7.06— applied to the facts of the case and demanded a hearing. Petitioner also explained:

"The allegations are not sufficiently definite and certain to allow [petitioner] to fashion a defense. The allegations do not specify which ethical principles are claimed to be violated by the several factual allegations. [Petitioner] cannot ascertain whether each factual allegation is claimed to violate each cited principle, or whether the factual allegations give rise to some but not all of the claimed violations. The allegations should be made more specific in this regard."

On June 29, 1998, petitioner's attorney sent a letter to the Board, which provided additional facts regarding the case in an attempt "either to terminate the disciplinary proceeding or, at the very least, to substantially pare down the issues for August's hearing." The letter then stated:

"Insofar as [petitioner] has never received a communication from the Board explaining how the alleged facts constitute violations of the cited ethical rules, it is difficult to know the precise basis of the Board's claims. The notice issued to [petitioner] by the Board on July 11, 1997, states the alleged facts and then conclusorily states the ethical rule potentially violated. The [n]otice, moreover, makes the several factual allegations and then, in a separate paragraph and without indicating which rule is violated by which fact, lists all the ethical rules allegedly violated."

The letter also discussed each of the factual allegations made by the Board in connection with the several ethical principles cited by the Board. In the letter, petitioner's attorney specifically discussed the allegation regarding the lack of consent and stated that petitioner understood the Board's view to be that "the ethical rule allegedly violated here is 1.21[a]." Petitioner's attorney argued that Rule 1.21 was inapplicable and expressed confusion as to the Board's position.

On August 27, 1998, the Board's attorney sent a response to petitioner's attorney. The letter began with the following explanation of the notice:

"In the Board's notice, certain facts are alleged. The factual recitation is not very long nor very complicated. Based on those facts, the Board also alleges that [petitioner] violated the following ethical rules: 1.21(a); 1.06; 1.14; 2.01(b); 7.02(b) and 7.06. In addition to these rule violations, the Board also alleges that [petitioner] treated or examined [child] without consent of his custodial parent, [mother]."

The letter proceeded to discuss each of the six principles and explained how, in the Board's view, petitioner's conduct violated each one. Although the letter was somewhat ambiguous as to how any of the principles was violated by petitioner's failure to obtain mother's consent, it confirmed that the Board's position was that such conduct would violate Principle 1.21. The letter stated:

"Ethical standard 1.21(a) requires that psychologists must clarify the nature of their relationship with each party when agreeing to provide services at the request of a third party. This clarification includes clarifying the role of the psychologist, as well as probable uses of the services or

information provided by the psychologist. Paragraph (b) of this ethical standard deals with the foreseeable risk of a conflicting role and the clarification required to keep all parties appropriately informed as the matter develops. It was foreseeable, that [petitioner] would be in conflicting roles, for example, he *did not obtain consent to treat the child*, although he knew that the child's parents were divorced and that the child primarily lived with the mother and the father was the one bringing the child in for evaluation. [Petitioner] also must have expected that he might be called as an expert witness in any hearing wherein the issues of care of the child might be relevant, such as a custody hearing. [Petitioner] made no efforts to communicate with mother who definitely falls into the definition of a 'party'."

Toward the end of the letter, the Board suggested that petitioner's failure to obtain mother's consent also violated Principle 7.06.

"Ethical standard 7.06 requires that when involved in forensic activities, psychologists must be aware of the competing demands placed on them by the ethical standards and the court system and take steps to resolve those tensions responsibly. In this case, [petitioner] was engaged in forensics and should have seen the conflict potentially arising due to the possibility that he would be required to participate in the mother and father's ongoing struggle for custody of the children. It was foreseeable that this tension might have affected his role when examining the child and he should have contacted the child's mother * * * or at least obtained a copy of the divorce decree to determine what the terms of custody were as awarded by the court.

"The custody issue, of course, relates to whether or not the father who brought [child] in for an examination could consent to examination and treatment by [petitioner]. It is apparent from the court documents that [father] did not have custody and therefore did not have the power to consent to or authorize such medical treatment."

The Board's letter did not say that petitioner violated any additional ethical principle other than the six cited in the Board's notice and, specifically, did not suggest that any ethical principle other than Principles 1.21 or 7.06 was violated by petitioner's failure to confirm mother's consent.

The case proceeded to a hearing before a hearings officer. At the beginning of the hearing, petitioner made a motion *in limine* to exclude all evidence relating to petitioner's alleged failure to obtain mother's consent on the ground that none of the principles cited by the Board required parental consent to treatment; therefore, such evidence was irrelevant. The Board responded that petitioner's failure to obtain mother's consent was indeed relevant to the ethical principles cited in the notice when considered in connection with the other factual allegations. In addition, the Board's attorney noted that other ethical principles required psychologists to properly obtain consent, such as Principle 4.02, which the Board argued was directly on point. Principle 4.02 provides, in part:

> "(a) Psychologists obtain appropriate informed consent to therapy or related procedures using language that is reasonably understandable to participants. The content of informed consent will vary depending upon many circumstances; however, informed consent generally implies that the person (1) had the capacity to consent, (2) has been informed of significant information concerning the procedure, (3) has freely and without undue influence expressed consent, and (4) consent has been appropriately documented.

> "(b) When persons are legally incapable of giving informed consent, psychologists obtain informed permission from a legally authorized person if such substitute consent is permitted by law."

According to petitioner, and the Board does not argue otherwise, this was the first time that the Board referred to Principle 4.02 or any other principle that was not cited in the Board's initial notice. The hearings officer declined to rule on petitioner's motion, opting instead to postpone ruling until after both sides had presented their evidence.

The hearing took place over three days. The evidence included testimony from expert witnesses regarding the reasonableness of petitioner's conduct under the circumstances. In addition, the dissolution judgment was offered to determine whether father was legally capable of consenting to treatment on behalf of child. Experts in domestic relations law were called to testify about parental consent to medical

treatment under Oregon law. There appears to have been some disagreement among the experts as to whether father, as a noncustodial parent, could legally provide consent for child under the terms of the dissolution judgment. The judgment specifically granted both parents the right to participate in decisions regarding child's medical care and to consult with child's medical care providers, but it did not mention who was given authority to consent on behalf of child.

The parties agreed to submit written closing arguments. In its closing argument, the Board maintained that petitioner had violated three of the six ethical principles cited in the initial notice and withdrew its allegations regarding the other three. The Board also argued that petitioner had violated three principles that were not cited in the notice, including Principle 4.02. After considering the evidence, the hearings officer issued a proposed order, concluding that petitioner had not violated any of the six principles initially alleged by the Board or any of the other principles that the Board raised for the first time at the hearing. With respect to Principle 4.02, the hearings officer concluded that father had legal authority to consent to petitioner's evaluation of child and that petitioner properly obtained father's consent prior to treatment.

The Board entered a final order, in which it agreed with all aspects of the proposed order except those relating to Principle 4.02. The Board concluded that, despite expert testimony to the contrary, father was legally incapable of consenting to treatment on behalf of child because the dissolution judgment gave mother custody of child. In the Board's view, petitioner's subjective belief—no matter how reasonable under the circumstances—that father was legally capable of providing consent for child was irrelevant for purposes of Principle 4.02. Similarly, the dissolution judgment's ambiguity and the experts' disagreement as to its effect were equally irrelevant. The Board accordingly found that petitioner had violated Principle 4.02, reprimanded him, and entered a civil penalty against him for $1,000.

■ Petitioner sought judicial review, arguing, among other things, that the Board erred in denying his motion *in*

*limine* to exclude evidence regarding his failure to obtain consent from mother. Petitioner reasons that the Board had given him notice of disciplinary action based only on alleged violations of six ethical principles, none of which was relevant to mother's consent. Petitioner points out that the Board never mentioned Principle 4.02 until after the hearing had begun, well over one year after the Board had first notified petitioner of its intent to inquire into his conduct as it related to the six specified principles. The Board responds that, because "the notice contain[ed] a clear and detailed statement of the matters charged and is sufficiently detailed to allow the preparation of a defense, it is adequate under the statute." As the parties frame the issue, the question is whether the notice the Board gave met the requirements of ORS 183.415; that is, the Board does not dispute that, by objecting to the admission of evidence on consent, petitioner preserved his claim that the Board had failed to give him notice of the "particular sections of the statutes and rules involved," as ORS 183.415(2)(c) requires.[5]

The Board's argument that its notice was "adequate under the statute" may entail one of two separate issues. The Board may be taking the position that, as a matter of statutory construction, ORS 183.415 required no more than the notice it provided in this case. Alternatively, it may be arguing that, even if its notice did not comply with the literal terms of the statute, it substantially complied and that level of compliance is sufficient. We address each issue in turn.

ORS 183.415 provides, in relevant part:

"(1)   In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice * * *.

"(2)   The notice shall include:

---

[5] The Board also argues that petitioner's attorney waived a lack of notice argument in a statement made at the hearing during petitioner's motion *in limine*. We disagree. Petitioner's attorney stated that he was not basing his objection on notice required by due process. However, he specifically objected to the Board introducing evidence of conduct irrelevant to the ethical principles cited by the Board in its notice and to the Board's attempt to argue that petitioner violated principles other than the ones cited in the notice. Petitioner did not waive the argument that the notice did not comply with the statutory notice requirements in ORS 183.415.

"(a)   A statement of the party's right to hearing, or a statement of the time and place of the hearing;

"(b)   A statement of the authority and jurisdiction under which the hearing is to be held;

"(c)   *A reference to the particular sections of the statutes and rules involved*; and

"(d)   A short and plain statement of the matters asserted or charged."

(Emphasis added.)

■   As with all cases involving statutory construction, we look first to the statute's text, which provides the best evidence of the legislature's intent, and to its context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). The words of the statute should be given their plain and natural meaning. *Id*. Here, the statute could not be clearer; ORS 183.415(2)(c) requires an administrative body to provide "a reference to the particular * * * rules involved" before a hearing in a contested case. The Board's notice did not comply with that requirement; despite petitioner's repeated requests for clarification, the Board did not notify petitioner until after the contested-case hearing had begun of the rule that he allegedly violated.[6]

■   Alternatively, the Board argues that, even if it did not literally comply with ORS 183.415(2), it substantially complied and that was good enough. That argument is at odds with the statutory context. ORS chapter 183 contemplates two separate types of notice. ORS 183.413 requires that parties to a contested case be informed generally of their rights and remedies in the process. Subsection (2) of that

---

[6] There is a suggestion in the Board's brief that, under our case law, its notice complied with ORS 183.415(2)(c). The Board reads those cases too broadly. The issue, as we phrased it in *Campbell v. Bd. of Medical Exam.*, 16 Or App 381, 387-88, 518 P2d 1042 (1974), was whether the agency's failure to comply with the statutory notice provisions violated due process. We did not say that the agency's notice in that case complied with the statute—a point our opinion in *Stalder v. Bd. of Medical Examiners*, 37 Or App 853, 860, 588 P2d 659 (1978), made clear. The Board also relies on *OMAC v. Mental Health Div.*, 96 Or App 528, 774 P2d 1113, *rev den* 308 Or 405 (1989), to support its position. That opinion, however, said only that the notice "stated the authority for the action" and rejected the petitioner's contrary argument. *Id*. at 533. Neither of the cases that the Board cites suggests that the Board's notice in this case complied with the terms of ORS 183.415(2)(c).

statute sets out the information that must be provided. *See* ORS 183.413(2). Subsection (4) provides that "[t]he failure * * * to give notice of any item specified in subsection (2) of this section shall not invalidate any determination or order of the agency unless * * * the failure affects the substantial rights of the complaining party." *See* ORS 183.413(4).

ORS 183.415(2), the statute at issue here, requires notice of the charges or claims that an agency is asserting. The notice must include, among other things, "[a] reference to the particular sections of the statutes and rules involved" and "[a] short and plain statement of the matters asserted or charged." ORS 183.415(2)(c) and (d). ORS 183.415 does not include a subsection, as ORS 183.413 does, that provides that the failure to give the notice of any item specified in ORS 183.415(2) shall not invalidate the agency's determination or order unless it affects the party's substantial rights. When the legislature intended to permit substantial compliance with the statutory notice requirements, it said so expressly. *See* ORS 183.413(4). The legislature did not include a similar subsection in ORS 183.415, and settled principles of statutory construction counsel against reading such an exception into that statute. *See Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 233, 26 P3d 817 (2001); *Armstrong v. Rogue Federal Credit Union*, 328 Or 154, 160, 969 P2d 382 (1998); *State ex rel Hall v. Riggs*, 319 Or 282, 286, 877 P2d 56 (1994).

Even if we imported the doctrine of substantial compliance into ORS 183.415(2), doing so would not advance the Board's position here. That doctrine has been used in certain instances "to avoid the harsh results of insisting on literal compliance with statutory notice provisions." *Brown v. Portland School Dist. #1*, 291 Or 77, 81, 628 P2d 1183 (1981). In determining whether an agency has substantially complied with the applicable notice statutes, the courts have been careful to look to the particular facts of each case. *See Colson v. Bureau of Labor and Ind.*, 113 Or App 106, 111, 831 P2d 706 (1992). The court accordingly held in *Brown* that the plaintiff had substantially complied with the tort claim notice statute when he sent his otherwise timely tort claim notice by first-class rather than certified mail. *See* 291 Or at 79, 83. Similarly, in *Colson* we held that the agency had substantially complied with the requirement in ORS 659.095 that it

send notice to the respondent when it sent the notice to William Colson as the authorized representative of Sierra Vista Care Center rather than sending it to William Colson, dba Sierra Vista Care Center. *Colson*, 113 Or App at 108. In both cases, the difference between what the statute required and what the agency did could only be described as minimal.

In this case, the Board's notice informed petitioner of mother's allegation that petitioner had failed to obtain her consent to child's evaluation. The notice thus complied with ORS 183.415(2)(d) (requiring a "short and plain statement of the matters asserted or charged"). However, the notice did not comply with ORS 183.415(2)(c); it did not inform petitioner that mother's allegations, if proven true, would constitute a violation of Principle 4.02. The notice did not simply fail to cite Principle 4.02; it specifically mentioned six other ethical principles that petitioner allegedly violated. In its letters to petitioner and in the notice itself, the Board repeatedly tied the issue of consent to the allegations that he had violated Principles 1.21 and 7.06. Petitioner reasonably could have understood that the question of consent was limited to those allegations—both of which the Board ultimately withdrew.

If the Board's substantial compliance argument in this case were correct, little, if anything, would be left of the statutory requirement that an agency set out the specific statute and rules involved in the allegation. This is not a case in which the rule that was allegedly violated was apparent to both the Board and the licensee from the factual allegations, nor is this a case in which the violation is merely technical. Rather, this is a case in which petitioner was not informed until after the hearing had begun that the Board was proceeding under a completely different ethical principle than the ones cited in the notice. In short, this is not a case of substantial compliance. It is a case of noncompliance with ORS 183.415(2)(c). *See Parthenon Construction & Design, Inc. v. Neuman*, 166 Or App 172, 181, 999 P2d 1169 (2000) (holding that "[n]oncompliance is not 'substantial compliance' ").[7]

---

[7] This is also not a case of amending allegations based on a previously cited statute to conform to the evidence at hearing. *See, e.g., Bureau of Labor and Ind. v. City of Roseburg*, 75 Or App 306, 308-09, 706 P2d 956 (1985), *rev den* 300 Or 545 (1986). Rather, it involves adding a new charge based on a previously uncharged ethical principle.

Accordingly, the Board could not properly consider whether petitioner violated Principle 4.02. In light of our holding, we need not reach petitioner's alternative argument that the Board construed Principle 4.02 "in such a manner as to make it vague" and to bring petitioner's "conduct retroactively within its coverage." *Cf. Cochran v. Board of Psychologist Examiners*, 171 Or App 311, 320-23, 15 P3d 73 (2000) (Edmonds, P. J., concurring) (stating that rules must give adequate notice of the prohibited conduct). Because the Board found in favor of petitioner on all other charges, we reverse its order.

Reversed.