Argued and submitted July 2, 2002, reversed and remanded for reconsideration in part; otherwise affirmed January 29, 2003

## Ray DRAYTON,
*Petitioner,*

*v.*

## DEPARTMENT OF TRANSPORTATION,
*Respondent.*

74385, 85901, 86367;
A113350 (Control), A113351, A113352
(Cases Consolidated)

62 P3d 430

Russell L. Baldwin argued the cause and filed the briefs for petitioner.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, Deits, Chief Judge,* and Brewer, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

**LANDAU, P. J.**

In these consolidated cases, petitioner seeks judicial review of three final orders of the Oregon Department of Transportation (department) requiring him to remove outdoor advertising signs that the department concluded do not comply with the Oregon Motorist Information Act (OMIA), ORS 377.700 to 377.840. Advancing 21 assignments of error, petitioner argues, in essence, that the department's orders must be set aside because of defects in the notices of violation, because the orders are based on findings not supported by substantial evidence, because they are based on misinterpretations of the OMIA, and because the OMIA itself is unconstitutional. We affirm in part and reverse and remand for reconsideration in part.

## I. THE STATUTORY CONTEXT

To provide context for the relevant facts, we begin with a brief summary of the OMIA. As the Supreme Court explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 637, 20 P3d 180 (2001):

> "The legislature enacted the OMIA in 1971. Or Laws 1971, ch 770. The OMIA was Oregon's effort to comply with the federal Highway Beautification Act of 1965 (HBA), 23 USC § 131. The HBA established federal standards for erecting and maintaining outdoor advertising signs, displays, and devices along interstate and federally aided primary highways. *See* 23 USC § 131(a) (stating purposes of HBA). The HBA requires that, unless a state provides 'effective control' of outdoor advertising signs, the state will lose 10 percent of its federal highway funds. 23 USC § 131(b), (c). 'Effective control' essentially requires states to prohibit all outdoor advertising signs that are visible from an interstate or primary highway, unless a particular sign meets one of five statutory exceptions or is located in an industrial or commercial zone. *See* 23 USC § 131(c), (d) (setting out that prohibition and listing exceptions)."

(Footnote omitted.)

The OMIA generally prohibits erecting or maintaining certain signs—including, in particular, "outdoor advertising signs"—visible to the traveling public from a state highway unless the signs comply with the provisions of the OMIA,

administrative rules adopted under the OMIA, and any applicable federal requirements. ORS 377.715. An "outdoor advertising sign" is one that advertises:

"(a)   Goods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located;

"(b)   Facilities not located on the premises on which the sign is located; or

"(c)   Activities not conducted on the premises on which the sign is located."

ORS 377.710(23). Exceptions to the general prohibition include certain signs that existed on or before June 12, 1975, ORS 377.712(1), signs "of a governmental unit," ORS 377.735(1)(a), and "on-premises signs," ORS 377.735(1)(c).

The department is authorized to enforce the OMIA and, in particular, to issue permits to qualifying signs and to order the removal of noncomplying signs. ORS 377.775. The department is required to notify the owner of the sign of a violation of the OMIA. ORS 377.775(3)(a). The owner is permitted to request a hearing within 30 days of the notice. *Id.* The department has promulgated administrative rules to implement the OMIA. Among other things, the administrative rules define certain terms that are employed in the OMIA. Of particular relevance to this case is the rule concerning the meaning of the term "premises," which provides, in part:

"For the purpose of establishing whether a sign, visible from a State Highway and regulated under ORS Chapter 377, is not an on-premise sign, the following definition shall be used:

"(1)   The premises on which any activity is conducted is determined by the physical facts rather than property lines. It is the land occupied by the buildings or other physical uses that are necessary or customarily incident to the activity, including such open spaces as are arranged and designed to be used in connection with such buildings or uses."

OAR 734-059-0005.

## II.  FACTS

These cases involve three separate proceedings that, although consolidated for hearing, resulted in three separate final orders. We state the facts relevant to each as found by the department.

### A.  *Case No. 85901*

Petitioner owns real property in Lincoln City, located on Highway 101. On that property, he erected two signs. The first, located at milepoint 112.40, advertised the Chinook Winds Casino. The sign did not exist on or before June 12, 1975.

The second sign, located at milepoint 118.43, bears the words "WELCOME TO LINCOLN CITY—SEE OUR MANY URBAN RENEWEL [*sic*] PROJECTS UNDER WAY CITY WIDE." The sign did not exist on or before June 12, 1975.

On April 19, 2000, the department sent petitioner a notice of violation, alleging that the two signs are unpermitted outdoor advertising signs that are visible from the state highway in violation of various provisions of the OMIA. The notice did not mention any administrative rules.

Petitioner requested a hearing. Several months before the hearing, however, petitioner changed the text on the sign at milepoint 112.40, which advertised the Chinook Winds Casino, and substituted new text that now reads: "CATS LOADERS TRUCKS—RAY DRAYTON EXCAVATING—EXCAVATING CATWORK BACKFILLING TOPSOIL SAND GRAVEL LOT CLEARING SEPTIC SYSTEMS—994-2920." Petitioner keeps sand, gravel, and heavy equipment on the property where the sign is located. The phone number on the sign is for an office that is located approximately one mile down the highway.

At the hearing, petitioner advanced a variety of statutory and constitutional challenges. Among other things, petitioner argued that the new sign at milepoint 112.40 is not an "outdoor advertising sign" within the meaning of the OMIA because it advertises activities that occur on the premises. He argued that the sign at milepoint 118.43 also is not

an "outdoor advertising sign" because it does not advertise goods, products, or services. The department argued, among other things, that the signs are "outdoor advertising signs" because, under relevant administrative rules—in particular OAR 734-059-0005—the signs did not advertise activities that occur "on premises." Petitioner objected to the department's reliance on the administrative rule on the ground that, contrary to ORS 183.415(2), it had failed to mention the rule in its notice of violation.

The final order rejected each of petitioner's contentions, concluded that the signs do not comply with the OMIA, and ordered petitioner to remove the signs. Specifically, the final order concluded that the sign at milepoint 112.40 is an "outdoor advertising sign" within the meaning of the OMIA because it advertises activities that occur "off premises." The final order reasoned that, although the land on which the sign is posted was used for storing equipment and materials related to the excavation business that the sign advertises, the actual transaction between a customer and petitioner occurs at an office located down the road. In the course of reaching that conclusion, the final order referred to the definition of "premises" contained in the department's administrative rule:

"OAR 734-059-0005 defines 'premises.' The rule provides, in pertinent part, that for the purposes of establishing whether a sign is not an on-premise sign, a given definition should be used. That definition provides, in essence, that the premises upon which any activity is conducted is determined by the physical facts rather than simply property lines. OAR 734-059-0005(1). 'It is the land occupied by the buildings or other physical uses that are necessary or customarily incident to the activity, including such open spaces as are arranged and designed to be used in connection with such buildings or uses.' *Id.* The rule further provides that several things serve as examples of places that will not be considered part of the premises on which the activity is conducted, therefore making a sign on such premises outdoor advertising signs. One example is 'Any land which is not used as an integral part of the principal activity.' OAR 734-059-0005(2)(a). Another is 'Any land which is used for, or devoted to, a separate purpose unrelated to the advertised activity would not be a part of the

premises on which the activity is conducted even though under the same ownership(.)' OAR 734-059-0005(2)(b). Another example is 'Any land which is separated from the princip[al] activity, and is developed or used only at the site by structures or uses which are only incidental to the princip[al] activity, and which serves no reasonable or integrated purpose related to the activity other than to attempt to qualify the land for signing purposes(.)' OAR 734-059-0005(2)(c).

"The record in this matter reveals, by at least a preponderance of the evidence, that the sign at milepoint 112.40 is on land which is not integral to the principal advertised activity, presumably hiring equipment services or purchasing raw materials. Further, based on the recent copy changes to the sign, the land serves no reasonable or integrated purpose related to the activity other than to attempt to qualify the land for signing purposes.

"For example, nothing in the record supports a finding that a potential customer could simply deposit cash or a check at the site of the sign and leave with heavy equipment or raw materials. Such a scenario is highly unlikely. Rather, the record reveals, the person would have to go through an office and enter into some formal or informal contract for such goods or services. This is what constitutes the princip[al] business activity advertised in the sign.

"In short, I find that the land at the location of the sign is at most an incidental storage facility, in place as an attempt to qualify the land for signing purposes."

As for the sign at milepoint 118.43, the final order concluded that, merely because a sign does not advertise goods, products, or services does not automatically mean that it is a permitted sign under the OMIA.

B. *Case No. 74385*

Petitioner owns other property in Lincoln City on which he posted a sign, located at milepoint 114.41, that advertises Mo's Restaurant. The sign reads "Mo's 51st St. So. (Menu Service Available) Lunch and Dinner." Mo's Restaurant is located several blocks away from the sign. Petitioner purchased the property before 1975. At that time, the sign

advertised "Glen's Market," which was a market that operated on the property. Some time well after 1975, the advertising copy was changed to advertise Mo's Restaurant.

On May 1, 2000, the department sent petitioner a notice of violation, alleging that the sign is an unpermitted outdoor advertising sign that is visible from the state highway in violation of various provisions of the OMIA. As with the first notice of violation, this one also did not mention any administrative rules.

Petitioner requested a hearing. At the hearing, petitioner asserted various statutory and constitutional challenges, including that the sign at milepoint 114.41 is exempt under ORS 377.765(1) because it was originally constructed before June 12, 1975. The final order rejected all of those contentions, concluded that the sign was not subject to the exemption for outdoor advertising signs in existence on June 12, 1975, and ordered petitioner to remove it.

C. *Case No. 86367*

The final case involves three more signs located on property that petitioner owns in Lincoln City and that are visible from Highway 101. The first sign, located at milepoint 112.42, is posted on property at which petitioner keeps raw materials and heavy equipment used in his excavation business. The sign reads, "CATS LOADERS TRUCKS 994-2920—RAY DRAYTON'S—EXCAVATING-CAT WORK-BACK FILLING-SAND-GRAVEL-LOT CLEARING." The sign did not exist on or before June 12, 1975.

The second sign, located at milepoint 112.46, also is posted on property at which petitioner keeps raw materials and heavy equipment. The sign bears the words "CATS LOADERS TRUCKS—RAY DRAYTON EXCAVATING — EXCAVATING-CATWORK-BACKFILL-ING-TOPSOIL-SAND-GRAVEL-LOT CLEARING-SEPTIC SYSTEMS—994-2920." The sign did not exist on or before June 12, 1975.

The third sign, located at milepoint 112.45, advertised Ashley Inn Suites, a business that is not located on the property. The sign also did not exist on or before June 12, 1975.

On May 1, 2000, the department sent petitioner a notice of violation, alleging that the three signs are unpermitted outdoor advertising signs that are visible from the state highway in violation of the OMIA. The notice did not mention any administrative rules.

Petitioner requested a hearing. Before the hearing, the sign at milepoint 112.45 that advertised the Ashley Inn Suites was removed—it is not clear by whom—leaving only the sign post. At the hearing, petitioner asserted his statutory and constitutional objections to the department's notice of violation. The department contended, as it had in Case No. 85901, that the signs that advertised excavation and similar activities are "outdoor advertising signs" within the meaning of the OMIA because they do not advertise activities that occur "on premises" within the meaning of OAR 734-059-0005. Petitioner again objected to the department's reliance on that rule on the ground that the department had failed to include mention of it in its notice of violation.

The department's final order rejected all of petitioner's objections, concluded that the signs violated OMIA, and ordered the removal of the signs. In concluding that the first two signs are "outdoor advertising signs" within the meaning of the OMIA, the final order adopted nearly verbatim the same reasoning that it employed in addressing the same issue in Case No. 85901, that is, it expressly relied on the definition of "premises" in OAR 734-059-0005. As for the sign post at milepoint 112.45, which no longer holds a sign, the final order concluded that it remains subject to the OMIA because it is a component part of a sign that was installed without the required permit.

## III. ANALYSIS

A. *Whether the Notices of Violation are Adequate Because They Do Not Cite Relevant Rules*

Petitioner begins by arguing that the final orders in all three cases must be set aside because they rely on administrative rules—in particular OAR 734-059-0005—that were not mentioned in any of the notices of violation. According to

petitioner, under ORS 183.415, the department was obligated to provide notice of any administrative rule on which the department intended to rely.

The department acknowledges that the notices in each of the three cases did not mention any administrative rules. It further acknowledges that the final orders in Case Nos. 85901 and 86367 do refer to OAR 734-059-0005. It nevertheless argues that, even though the notices did not comply with ORS 183.415, petitioner cannot be heard to complain because he waived any right to do so and because he suffered no prejudice. For the reasons that follow, we agree with petitioner.

ORS 183.415 provides, in part:

"(1)   In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, served personally or by registered or certified mail.

"(2)   The notice shall include:

"(a)   A statement of the party's right to a hearing, or a statement of the time and place of the hearing;

"(b)   A statement of the authority and jurisdiction under which the hearing is to be held;

"(c)   A reference to the particular sections of the statutes and rules involved; and

"(d)   A short and plain statement of the matters asserted or charged."

The phrasing of the statute is broad. It does not require a notice to include a reference merely to statutes or rules that have been violated. It requires a notice to include references to any sections of statutes and rules "involved." The ordinary dictionary definitions of the term "involve" include, among others, "to have within or as part of itself," "to require as a necessary accompaniment," and "to have an effect on : concern directly." *See Webster's Third New Int'l Dictionary* 1191 (unabridged ed 1993). That is not to say that the statute requires an agency to mention in a notice of violation each and every administrative rule—however peripherally pertinent—that it might ultimately mention in its final orders; as

the dictionary definitions suggest, "involved" implicates at least some element of substantial relevance.

■    Certainly, whatever the statutory term reasonably may be taken to mean, OAR 734-059-0005 was "involved" in this case. The department concedes that much. Its final orders in Case Nos. 85901 and 86367 relied on the rule explicitly and extensively in their analyses of the issue of whether the signs were "outdoor advertising signs" within the meaning of the OMIA. Indeed, the final orders in both cases conclude that the signs violate the OMIA precisely because they do not advertise "on premises" activities within the meaning of *the rule*.

As we have noted, the department argues that, in spite of its failure to provide notice of the rule, petitioner cannot now complain. First, the department argues that he "waived" any right to complain about the department's reliance on the rule. Petitioner, however, plainly and unequivocally objected to the department's reliance on the rules at the hearings. We reject the department's argument without further discussion.

■    Second, the department argues that petitioner cannot complain about the adequacy of the notice because he was given time after the hearing to respond to the department's reliance on the administrative rule and failed to take advantage of that opportunity. Our decision in *Villanueva v. Board of Psychologist Examiners*, 175 Or App 345, 27 P3d 1100 (2001), *adh'd to on recons*, 179 Or App 134, 39 P3d 238 (2002), however, is directly contrary to the department's argument. In that case, we held that ORS 183.415 unambiguously requires that an agency providing notice of charges or claims in a contested case must include a reference to any administrative rules involved. *Id.* at 356. In that case, the Board of Psychologist Examiners reprimanded and fined the petitioner for treating a child without the custodial parent's consent. The board's notice of proposed disciplinary action alleged that the petitioner had violated one set of rules, but its final order concluded that he had violated another rule, one that was not mentioned in the notice. We reversed, holding that, under ORS 183.415(2), the board was obligated to provide notice of the rule that formed the basis of its final

decision. *Id.* The board requested reconsideration on the ground that the petitioner had been given an opportunity at the hearing to respond to the newly cited rule and thereby suffered no prejudice. We rejected the argument, explaining that "the absence of adequate notice is prejudicial in and of itself." *Villanueva,* 179 Or App at 138.[1]

Third, the department argues that, in any event, its reliance on OAR 734-059-0005 did not prejudice petitioner because it could have reached the same legal conclusions without reference to the administrative rule. Even assuming for the sake of argument that the department is correct that its reliance on the rule was not necessary, the fact remains that the department did rely on it—at length—as *the* basis for its conclusion that petitioner's signs are "outdoor advertising signs" within the meaning of the OMIA. Moreover, in asserting what is essentially an alternate ground for affirming the final orders, the department incorrectly assumes that the relevant facts are not in dispute and that, for example, "[n]othing in the record indicates that any excavating, catwork, back filling or lot clearing is 'conducted' or carried out at any of the sites where petitioner's signs are located." In fact, petitioner does contest the relevant facts and, in particular, whether there is excavating and related activity at the sites of the signs. Our review of the record reveals that there indeed is testimony that at least one of the properties is "kind of a mining pit" that is "a source of materials for—for the business and a place to store gravel and load gravel and sand." The final orders make no specific findings about those matters, and we certainly will not do so for the first time on review. *See Outdoor Media Dimensions Inc.,* 331 Or at 659-60 ("if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance" (emphasis in original)).

We conclude that the department's notices of violation in Case Nos. 85901 and 86367 were inadequate under

---

[1] The department does not argue that, and we do not address whether, it could have issued an amended notice and continued the hearing.

ORS 183.415 because they failed to give notice of the administrative rules that were the basis for its conclusion that petitioner's three signs advertising excavation and related activities violated the OMIA. The portions of the final orders concerning the signs at milepoints 112.40, 112.42, and 112.46, therefore must be reversed and remanded for reconsideration.

B. *Whether the Sign Post at Milepoint 112.45 Is Exempt Because It No Longer Contains Advertising Copy*

Our conclusion concerning the adequacy of the department's notices of violation with respect to the three signs that advertise excavation and related activities does not affect the validity of the department's final orders with respect to the other signs. The final orders concerning those other signs do not involve the application of OAR 734-059-0005 or any other administrative rule. Thus, we must address petitioner's remaining arguments about the validity of the final orders concerning those other signs.

We begin with petitioner's argument that the department erred in concluding that the sign at milepoint 112.45 violates the OMIA. According to petitioner, the advertising copy was removed from the sign, leaving only a sign post, which he contends cannot be a prohibited "outdoor advertising sign" within the meaning of the statute. The department responds that merely removing advertising copy from the sign did not bring it into compliance with the act. We agree with the department.

As we have noted, ORS 377.715 generally prohibits erecting or maintaining "outdoor advertising signs" that are visible to the traveling public from a state highway unless the signs meet certain requirements of state and federal law. An "outdoor advertising sign" is a "sign" that advertises certain goods, products, services, facilities, or activities. ORS 377.710(23). A "sign" includes "the sign structure, display surface and all other component parts of a sign." ORS 377.710(29). A "sign structure," in turn, is defined as "the supports, uprights, braces, framework and display surfaces of a sign." ORS 377.710(33). Thus, merely because the display surface of a sign has been removed does not mean that

the remaining sign post is not a "sign" within the meaning of the OMIA.

Petitioner insists that, even if the sign post constitutes a "sign" within the meaning of the statute, it still does not constitute an "outdoor *advertising* sign" because it does not advertise anything, as the statutory definition of "outdoor advertising sign" plainly requires. *Outdoor Media Dimensions Inc. v. State of Oregon*, 150 Or App 106, 945 P2d 614 (1997), *aff'd*, 331 Or 634, 20 P3d 180 (2001), disposes of that argument. In that case, the plaintiff erected a sign with a message on each side. After receiving notice from the department that the sign was an unlawful "outdoor advertising sign" within the meaning of the OMIA, the plaintiff removed all advertising copy from the sign and argued that the sign no longer offended the OMIA. The department disagreed, and we affirmed. We acknowledged that, once the plaintiff removed the advertising copy, the sign no longer was an "outdoor advertising sign" within the meaning of the OMIA. We held that that was beside the point, however. Once a sign has been determined to be out of compliance, we explained, the statute provides that the plaintiff could bring the sign into compliance in one of two ways, either by obtaining a permit or by removing the sign. Because a "sign" is defined to include the structure, display surface, and other component parts, we held, removal of the sign may be accomplished only by removal of the sign in its entirety, not merely removal of the display surface. 150 Or App at 111-12. On review, the Supreme Court noted that, while there actually may be additional ways to bring a sign into compliance, "rendering the sign blank does not constitute compliance." 331 Or at 650.

■ Thus, in this case, although after petitioner removed the advertising copy from the sign, it was no longer an "outdoor advertising sign" within the meaning of the OMIA, that action, in and of itself, did not bring the sign into compliance with the act. We therefore conclude that the department did not err in concluding that the sign post at milepoint 112.45 violates the OMIA.

## C. *Whether the Sign at Milepoint 118.43 Is Exempt Under ORS 377.735 as a "Sign of a Governmental Unit"*

Petitioner next contends that the department erred in concluding that the sign at milepoint 118.43, which welcomes visitors to Lincoln City, violates the OMIA. He argues that the sign is a "sign of a governmental unit," and therefore permitted under ORS 377.735(1). In any event, he argues, the sign is not an "outdoor advertising sign" within the meaning of the OMIA because it does not advertise any goods, products, or services. The department argues that the sign is not a sign of a governmental unit because petitioner is not a governmental unit and that, as we held in *Outdoor Media Dimensions Inc.*, merely because a sign is not an "outdoor advertising sign" does not necessarily mean that it complies with the OMIA. We agree with the department in both respects.

■ First, as to whether the sign is "a sign of a governmental unit," it is true that the OMIA exempts such signs. ORS 377.735(1)(a). Included among the signs that are exempt under that provision are "traffic control or regulatory devices, legal notices or warnings." *Id.* The statute defines "governmental unit" to mean "the federal government, the state, or a city, county or other political subdivision or an agency thereof." ORS 377.710(14). Petitioner argues that his sign should be regarded as a sign of a governmental unit because "he was involved in city politics, and worked closely with the urban renewal district" and the message of the sign merely informs the public about urban renewal district projects. Plainly the argument does not meet the requirements of the statute, and we reject it without further discussion.

■ Second, concerning whether the sign is an "outdoor advertising sign," we note that the statute does not limit the definition of the term to advertising goods, products, or services. It also defines the term to include signs that "inform or attract the attention of the public" to "[a]ctivities not conducted on the premises." ORS 377.710(23)(c). Further, as we held in *Outdoor Media Dimensions Inc.*, a sign does not need to advertise goods, products, or services to come within the

reach of the OMIA. Thus, for example, a sign that proclaims "Save the Whales" is not necessarily exempt from the act:

"We do not agree that a sign proclaiming 'Save the Whales' is exempt from the OMIA simply because it does not advertise goods, products, services, or facilities. Whether such a sign is subject to the OMIA is a matter of legislative intent that involves interpretation of the statute. As always, we interpret a statute by first examining its text and context.

"Although the text of the OMIA's operative provisions generally addresses only what is *prohibited* in the absence of a permit (*i.e.*, off-premises signs), we construe them in context as also defining the limits of what is *allowed*—*i.e.*, only on-premises signs. Context includes 'other provisions of the same statute.' [The OMIA] effectively places a cap on the number of highway billboards in Oregon by denying permits for the installation of new billboards after June 12, 1975. Also, [the act] provides that one of the purposes of the OMIA is to 'preserve the natural beauty and aesthetic features of [the state's] highways and adjacent areas.' Given that language, we do not believe the legislature intended to allow the indiscriminate installation of billboards bearing messages such as 'Save the Whales' simply because those signs do not advertise goods, products, services or facilities."

150 Or App at 116-17 (citations omitted; emphasis in original; last set of brackets in original). For the same reasons that a sign proclaiming "Save the Whales" is not allowed under the OMIA without a permit, so also petitioner's sign proclaiming a welcome to Lincoln City and advertising various activities of the urban renewal district is not allowed. We therefore conclude that the department did not err in concluding that the sign at milepoint 118.43 violates the OMIA.

D. *Whether the Sign at Milepoint 114.41 Is Exempt Because It Existed on or Before June 12, 1975*

■      Petitioner also argues that the final order in Case No. 74385 erroneously concluded that the sign at milepoint 114.41, which advertises Mo's Restaurant, is a prohibited "outdoor advertising sign" within the meaning of the OMIA. According to petitioner, the sign was first posted well before June 12, 1975, and therefore is subject to the exemption in

ORS 377.765(1). The department responds that, while a sign certainly existed before June 12, 1975, it was not an "outdoor advertising sign," and, therefore, was not subject to the statutory exemption found in ORS 377.765. We agree with the department.

ORS 377.765(1) provides that "[o]utdoor advertising signs in existence on June 12, 1975, * * * may remain." Thus, in order for the exemption to apply, the sign in existence on June 12, 1975, must have been an "outdoor advertising sign" at that time. An "outdoor advertising sign" is defined to exclude advertisements of on-premises activities and services. ORS 377.710(23). In this case, the sign at milepoint 114.41 originally advertised Glen's Market, a market that operated on the property. Thus, the original sign was an on-premises sign and was not an "outdoor advertising sign" within the meaning of the OMIA. The advertising copy was changed well after 1975. Therefore, the sign as it now reads, advertising Mo's Restaurant, an off-premises activity, cannot claim the exemption of ORS 377.765(1).

E. *Other Arguments*

In addition to the foregoing arguments, petitioner challenges the constitutionality of the OMIA and its implementing regulations on the ground that they violate the free speech guarantees of both Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. All of those arguments have been decided adversely to petitioner in our decisions in *Outdoor Media Dimensions Inc.*, 150 Or App at 117-18, *Media Art Co. v. City of Gates*, 158 Or App 336, 341, 974 P2d 249 (1999), *rev den*, 332 Or 56 (2001), and *Herson v. DMV*, 157 Or App 683, 686, 971 P2d 492 (1998), *rev den*, 332 Or 56 (2001), *cert den*, 534 US 1113 (2002). Petitioner urges us to reconsider those decisions. We decline to do so.

Petitioner also assails a number of the findings of fact in the final orders on the ground that they are not supported by substantial evidence. We have reviewed the record as a whole and conclude that the department did not err in its findings of fact.

Final orders in A113351 (Case No. 85901) and A113352 (Case No. 86367) reversed and remanded for reconsideration as to signs at milepoints 112.40, 112.42, and 112.46; otherwise affirmed.