Argued and submitted May 20, 2014, reversed April 29, 2015

James Michael MURPHY, M.D.,
*Petitioner,*

*v.*

OREGON MEDICAL BOARD,
*Respondent.*

Oregon Medical Board
091334; A152438

348 P3d 1173

Kendra M. Matthews argued the cause for petitioner. With her on the briefs was Ransom Blackman LLP.

Carolyn Alexander, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner seeks judicial review of a final order of the Oregon Medical Board (the board) that imposed on petitioner a reprimand, fine, and costs of the proceeding for engaging in "[u]nprofessional or dishonorable conduct." ORS 677.190(1)(a). The board disciplined petitioner based on its conclusion that petitioner's conduct of drinking one or two glasses of wine with dinner while on call as a cardiac anesthesiologist violated an established community standard of ethics that cardiac anesthesiologists not consume any alcohol while on call. The hospital for which petitioner was on call also had a policy that employees not consume any alcohol while on call, which the board concluded reflected the community ethical standard. On appeal, petitioner argues that the board did not provide him with adequate notice of the alleged violation of a community ethical standard and, even if it did, that the board's order lacks substantial evidence and reason to support its conclusion that such a standard exists. We review the board's order for errors of law and substantial evidence. ORS 183.482(8). Because we conclude that the board did not give petitioner adequate notice, we reverse and do not reach petitioner's other assignments of error.

Petitioner is a board-certified anesthesiologist. In 2008, petitioner signed a services agreement with Tuality Heathcare under which he became a member of the medical staff of Tuality Community Hospital as a sole practitioner providing anesthesia services, including 24-hour cardiac call coverage on a rotating basis with two other anesthesiologists. Under the agreement, petitioner was required to provide services in accordance with the terms of all applicable hospital policies, bylaws, rules, and regulations. In April 2009, Tuality Healthcare issued a revised "Maintaining a Drug Free Workplace" policy. Under a section referencing "employees," the policy prohibited, among other things, employees from using or having alcohol in their systems while on call.

On September 4, 2009, petitioner was on cardiac call when he went to dinner with his wife and his colleague, who was then residing in petitioner's home. During dinner, petitioner consumed one or two glasses of wine. At some

point early in the evening, petitioner called Dr. Hildebrant, another cardiac anesthesiologist who was at the hospital, and asked him to check on a patient and place a catheter if needed. Hildebrant agreed to do so. During that call, petitioner's wife left the restaurant because she and petitioner's colleague had an argument. Petitioner and his colleague then had an argument at the restaurant before leaving together. While they walked home, petitioner's wife called petitioner and told him that she did not want his colleague staying in the house.

Once at petitioner's house, the argument between petitioner and his colleague escalated into a physical altercation when petitioner told his colleague he needed to move out of the house immediately and could not go inside. During the confrontation, petitioner had two additional calls with Hildebrant—one regarding the outcome of the patient Hildebrant had checked on and the other to inform Hildebrant of the altercation. Ultimately, the police were informed of the altercation, and petitioner was arrested. Petitioner's wife informed Hildebrant of the arrest, and, as a result, Hildebrant assumed petitioner's call duties until petitioner's release from jail the next morning. All charges against petitioner were dismissed.

The board brought a complaint and notice of proposed disciplinary action (complaint) against petitioner under ORS 677.205, alleging that he violated "ORS 677.190(1)(a)[,] unprofessional or dishonorable conduct, as defined by ORS 677.188(4)(a)." "Unprofessional or dishonorable conduct" is defined as

> "conduct unbecoming a person licensed to practice medicine or podiatry, or detrimental to the best interests of the public, and includes:
>
> "(a) Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession or any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public or any conduct, practice or condition which does or might adversely affect a physician's or podiatric physician and surgeon's ability safely and skillfully to practice medicine or podiatry[.]"

ORS 677.188(4)(a) (2011), *amended by* Or Laws 2013, ch 129, § 11.[1] The only allegation in the board's complaint specifying which of petitioner's actions constituted unprofessional or dishonorable conduct stated:

"At the time of the above described incident, Tuality Community Hospital had a policy regarding a Drug Free Work Place that prohibited drinking while on call. [Petitioner's] consumption of alcohol while on call constitutes unprofessional or dishonorable conduct."

Petitioner requested a contested case hearing, which was conducted before an administrative law judge (ALJ). At the hearing, the board sought to proceed on two bases: (1) that petitioner engaged in unprofessional or dishonorable conduct when he violated Tuality's drug-free workplace policy by consuming alcohol while on call and (2) that he engaged in unprofessional or dishonorable conduct by consuming alcohol while on call because it violated an underlying ethical obligation. Petitioner argued that the board could not proceed on the second basis—that he violated an underlying ethical obligation—because he was not given adequate notice of that allegation. Petitioner also informed the ALJ that, because of the lack of notice, he was not prepared to go forward with a defense to the underlying ethical obligation allegation, had no witnesses to address that issue, and requested a continuance. The ALJ concluded that the complaint provided sufficient notice to petitioner and thus denied petitioner's request for a continuance and allowed the board to proceed.

---

[1] The board has further defined, by rule, unprofessional conduct, as that term is used in ORS 677.190. The rule provides, in part:

"Unprofessional conduct: Unprofessional conduct includes the behavior described in ORS 677.188(4) and is conduct which is unbecoming to a person licensed by the Board of Medical Examiners or detrimental to the best interest of the public and includes:

"(A) Any conduct or practice contrary to recognized standards of ethics of the medical, podiatric or acupuncture professions or any conduct which does or might constitute a danger to the public, to include a violation of patient boundaries.

"* * * * *

"(F) Any conduct related to the practice of medicine that poses a danger to the public health or safety."

OAR 847-010-0073(3)(b).

In the proposed order, the ALJ first concluded that petitioner's violation of a contract with Tuality did not constitute unprofessional or dishonorable conduct as defined in ORS 677.188(4)(a) (2011). The ALJ also made a specific finding, which the board incorporated into the final order, that, "[o]n September 4, 2009, no one observed any alcohol on [petitioner's] breath nor did he appear affected by the consumption of the wine. His interactions during his phone calls with Dr. Hildebrant were normal, and he was calm and appropriate." (Record citations omitted.)

With regard to the underlying ethical obligation, the ALJ made numerous findings. The ALJ noted that the American Medical Association (AMA) "publishes policies including H-30.960, titled 'Physician Ingestion of Alcohol and Patient Care,' (updated February 2011)." The ALJ quoted Policy H-30.960:

> "'Our AMA, believing that the possibility, or even the perception, of any alcohol-induced impairment of patient care activities is inconsistent with the professional image of the physician, (1) urges that physicians engaging in patient care have no significant body content of alcohol and (2) urges that all physicians, prior to being available for patient care, refrain from ingesting an amount of alcohol that has the potential to cause impairment of performance or create a "hangover" effect.'"

The ALJ also found that the AMA "publishes a Code of Medical Ethics including E-8.15, titled 'Substance Abuse.'" That policy provides, "It is unethical for a physician to practice medicine while under the influence of controlled substance, alcohol, or other chemical agents which impair the ability to practice medicine."

The ALJ also made findings with respect to two articles concerning physician alcohol use while on call, both submitted as exhibits. The ALJ noted that, in one of them, a 2003 article published in the Journal of Medical Ethics, the authors had conducted a survey to determine physicians' actual practice and to determine if there exists within the practice of medicine a standard governing drinking while on call. The ALJ noted that "the authors found that 'physicians ought not to drink while on call but so far the medical

profession has left this decision up to the discretion of the individual physicians.'" And, regarding a 2005 article published by a Harvard Medical School teaching affiliate that critiqued the study discussed in the 2003 article, the ALJ observed that it concluded, "'Though common sense might suggest that a physician should never be under the influence of alcohol while on call, this study revealed * * * that one fourth of the physicians surveyed reported drinking on call.'" (Omissions in original.)

As for relevant ethical standards issued by other medical organizations, both Dr. Peck and the board's other expert, Hildebrant, testified that the American Board of Anesthesiologists has not published any policies on the consumption of alcohol by anesthesiologists on call. And, Peck stated that neither the board nor the Oregon Medical Association had adopted any policies or rules regarding consumption of alcohol on call. However, the board's experts testified that they believed that there was a consensus or ethical obligation in the community for an anesthesiologist to refrain from consuming alcohol while on call.

Based on the evidence submitted at the hearing, the ALJ found that, although impairment from alcohol while on call would constitute unprofessional or dishonorable conduct, the board "failed to establish the existence of a recognized standard within the medical profession prohibiting the consumption of alcohol while on call." *See McKay v. Board of Medical Examiners*, 100 Or App 685, 690, 788 P2d 476 (1990) (noting that the statutory definition of "unprofessional or dishonorable conduct" was amended in 1975 to include "conduct or practice contrary to recognized standards of ethics of the medical profession" and stating that, "by using the term 'recognized,' [the legislature] intended to incorporate by reference ethical standards recognized by organized medicine relating to the protection of patients"). Because the ALJ found that petitioner was not impaired by the alcohol that he had consumed, the ALJ concluded that the board had no grounds on which to sanction petitioner.

The board disagreed with the ALJ's analysis and conclusions and issued an amended proposed order, which

was fully adopted into the final order. Although accepting the ALJ's findings as set out in the "findings of fact" section of the proposed order, the board made additional findings in its opinion regarding the existence of recognized community ethical standards and concluded that petitioner's consumption of alcohol while on cardiac call was a violation of ORS 677.190(1)(a), as defined by ORS 677.188(4)(a) (2011). First, the board determined that

> "the Tuality Community Hospital policy on a Drug Free Work Place is a reflection of the community standard of ethics. Furthermore, this policy is consistent with the testimony of both Dr. Peck and Dr. Hildebrant that a physician has an ethical duty to abstain from the consumption of alcohol while on call at a hospital, and that this policy is consistent with other hospitals in the community."

Second, the board found that (1) based on the testimony of Peck and Hildebrant, there is a recognized community ethical standard for physicians on call who are expected to report and provide direct patient care to comply with hospital drug-free policies and (2) based on a narrow characterization of the issue along with the presented evidence, there is a recognized community ethical standard for anesthesiologists to not consume any alcohol while on cardiac call at a hospital.[2] The board found it "notable that in the course of the contested case hearing, [petitioner] did not produce one physician to testify that they consumed alcohol while on call at a hospital, or thought that it was appropriate to do so." In addition, the board concluded that "consuming alcohol while on cardiac call places the physician at risk of impaired function, and as such, constitutes conduct 'which does or might adversely affect a physician's * * * ability to safely and skillfully practice medicine * * *.' ORS 677.[188](4)(a)." (Omissions in the board's order.) The board imposed discipline on petitioner consisting of a reprimand, a $5,000 civil penalty, and costs of the disciplinary action in the amount of $14,068.88. Petitioner seeks judicial review of the board's final order.

---

[2] Although the record had closed at the hearing, petitioner later proffered a letter from a clinical associate professor in the surgery department at Oregon Health Sciences University who indicated that there was no consensus among physician participants in an ethics skills lab she ran regarding a prohibition on alcohol consumption by a physician on call.

Petitioner first argues that he was not provided notice that the board would proceed against him on grounds other than that he violated Tuality's drug-free policy, contrary to the notice requirements of ORS 183.415(3) and the Fourteenth Amendment to the United States Constitution. Petitioner contends that, "[g]iven the structure of the Complaint, its explicit reference to the Tuality policy, and the lack of any publication—even in materials produced by the Board—that established a recognized ethical standard prohibiting the consumption of alcohol while on call, [petitioner] had no notice that the Complaint would be read in the manner contended by the Board."

In the contested case against petitioner, the board was required to comply with the statutes governing contested cases, which include ORS 183.415. ORS 677.200. That statute provides, in part:

"(1)  The Legislative Assembly finds that persons affected by actions taken by state agencies have a right to be informed of their rights and remedies with respect to the actions.

"(2)  In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, served personally or by registered or certified mail.

"(3)  Notice under this section must include:

"* * * * *

"(c)  A reference to the particular sections of the statutes and rules involved;

"(d)  A short and plain statement of the matters asserted or charged[.]"

ORS 183.415. Petitioner was also entitled to notice required by the Fourteenth Amendment.[3] *Campbell v. Bd. of Medical Exam.*, 16 Or App 381, 386, 518 P2d 1042 (1974) ("Petitioner's right, as a licensee (or applicant for active registration) to practice medicine, may be denied only by procedures satisfying the due process clause of the United States Constitution."). The purpose of requiring notice "is primarily to allow

[3] The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

petitioner an opportunity to prepare an adequate defense." *Id.* at 387. With that in mind, we turn to the board's complaint against petitioner.

The board's complaint contained two substantive paragraphs. The first, paragraph 2, provides in full, "The Board proposes to take disciplinary action pursuant to ORS 677.205 against [petitioner] for violations of the Medical Practices Act, to wit: ORS 677.190(1)(a)[,] unprofessional or dishonorable conduct, as defined by ORS 677.188(4)(a)." The second, paragraph 3, starts with the preamble, "[Petitioner] is a board certified anesthesiologist who practiced at Tuality Community Hospital at the time of the Board's investigation. The acts and conduct alleged to violate the Medical Practice Act are[.]" Paragraph 3.1 sets out a short factual statement of what occurred on the evening of September 4, 2009. Paragraph 3.2 then provides, in full, "At the time of the above described incident, Tuality Community Hospital had a policy regarding a Drug Free Work Place that prohibited drinking while on call. [Petitioner's] consumption of alcohol while on call constitutes unprofessional or dishonorable conduct."

The board contends that the complaint was sufficient under ORS 183.415(3) because it included the factual allegations against petitioner, and a citation to the statutes under which the board was proceeding: "ORS 677.190(1)(a)[,] unprofessional or dishonorable conduct, as defined in ORS 677.188(4)(a)." In particular, the board contends that, because the complaint alleged that petitioner's consumption of alcohol while on call was unprofessional or dishonorable conduct, petitioner was on notice that the board would proceed on the ground that his conduct violated medical ethical standards. The board urges that conclusion because the complaint references ORS 677.188(4)(a), which, the board notes, defines unprofessional or dishonorable conduct as including "'[a]ny conduct or practice contrary to recognized standards of ethics of the medical *** profession.'" We disagree and conclude that the board did not provide petitioner the notice required by ORS 183.415.

First, we note that the board's argument rests on the assumption that a reference to the definition of unprofessional or dishonorable conduct in ORS 677.188(4)(a) 2011) was

sufficient to put petitioner on notice that it would proceed under the part of ORS 677.188(4)(a) (2011) pertaining to a violation of recognized standards of ethics. But, the part of the definition appearing in subsection (4)(a) provides three separate types of conduct that rise to the level of unprofessional or dishonorable conduct:

> "[(1)] Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession *or* [(2)] any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public *or* [(3)] any conduct, practice or condition which does or might adversely affect a physician's or podiatric physician and surgeon's ability safely and skillfully to practice medicine or podiatry[.]"

ORS 677.188(4)(a) (2011) (emphases added). Thus, the board's reference to that statute in the complaint could not have given petitioner unequivocal notice that the board intended to proceed on the basis that he violated a recognized standard of ethics. At best, the board's reference to the statute could only have given petitioner notice that the board *might* proceed on that basis, as opposed to one of the other two bases in the statute, both of which could have also applied to a physician drinking while on call.

To determine whether the board's statutory reference did provide adequate notice of what the board intended to prosecute, we return to the allegations in the board's complaint. In paragraph 3 of the complaint, the board sets out the following flow of allegations: petitioner practiced at Tuality at the time of the incident; petitioner consumed alcohol while on cardiac call for Tuality; Tuality has a drug-free policy prohibiting employee's consumption of alcohol while on call; therefore, petitioner's consumption of alcohol while on call is unprofessional and dishonorable conduct. Based on that flow of allegations, petitioner actually did understand and reasonably could have understood that the board was proceeding based *only* on an allegation that petitioner's violation of Tuality's drug-free policy was what constituted unprofessional or dishonorable conduct.

That understanding is even more reasonable, if not compelled, in light of the board's explanation of the basis

for its proposed disciplinary action in a separate paragraph that explicitly refers to Tuality's policy: "At the time of the above described incident, Tuality Community Hospital had a policy regarding a Drug Free Work Place that prohibited drinking while on call. [Petitioner's] consumption of alcohol while on call constitutes unprofessional or dishonorable conduct." Thus, the notice petitioner received focused on the hospital's policy. Having provided that explicit explanation of the basis on which it was choosing to proceed, the board could not then change course at the contested case hearing (and, indeed, again in the final order) without first providing petitioner adequate notice so that he could have the opportunity to prepare a defense. *See Villanueva v. Board of Psychologist Examiners*, 175 Or App 345, 358, 27 P3d 1100 (2001), *adh'd to on recons*, 179 Or App 134, 39 P3d 238 (2002) (holding that, where the notice, and pre-hearing letters, to the petitioner repeatedly tied the issue of consent to violations of certain ethical rules, and not the rule on which the board later based its order, "[p]etitioner reasonably could have understood that the question of consent was limited to those allegations[.]").

In its final order, the board did not base its conclusion that petitioner violated ORS 677.190(1)(a) on petitioner's violation of Tuality's drug-free work policy, as provided in the complaint.[4] Instead, the board found that Tuality's policy was a reflection of a recognized community ethical standard and concluded that petitioner had violated that community ethical standard. The board also based its order on two additional theories that the board had not even argued at the contested case hearing: that petitioner violated a recognized community ethical standard for physicians on call to comply with hospital drug-free policies and that consuming alcohol while on cardiac call constitutes conduct that might adversely affect a physician's "ability safely and skillfully to practice medicine." ORS 677.188(4)(a) (2011).

Petitioner was prejudiced by the board's failure to provide him with adequate notice of the bases on which the board determined he should be disciplined. *Villanueva*, 179 Or App at 138 ("[T]he absence of adequate notice is

---

[4] Petitioner's agreement with Tuality stated that he was an independent contractor; Tuality's policy referred to "employees."

prejudicial in and of itself.""). The board's own order makes clear the prejudice to petitioner by "find[ing] it notable that in the course of the contested case hearing, [petitioner] did not produce one physician to testify that they consumed alcohol while on call at a hospital, or thought it was appropriate to do so." Accordingly, we reverse.

Reversed.