ORTEGA, P. J.
*120 Licensee, a medical doctor, petitions for judicial review of a final order of the Oregon Medical Board (the board) that revoked her license to practice medicine, imposed a $10,000 fine, and assessed the costs of the proceeding. The board imposed those sanctions on the basis that licensee violated several provisions of ORS 677.190 by violating an interim stipulated order (ISO) and, among other things, breaching the standard of care in the course of prescribing controlled substances. On review, in three of her seven assignments of error, licensee argues that the board did not provide her the notice required by ORS 183.415(3) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1] As we explain below, reviewing for legal error, Murphy v. Oregon Medical Board , 270 Or. App. 621, 622, 348 P.3d 1173 (2015), we disagree with licensee that she received inadequate notice with respect to the board's conclusion that licensee violated the ISO but agree with her that she received inadequate notice as to the board's remaining grounds for discipline. That conclusion obviates the need to address licensee's remaining assignments of error except for her claim that the board erred in concluding that she violated the ISO because it did not consider her advice-of-attorney defense as to whether her conduct was willful. We reject that assignment without written discussion. Because we conclude that the board did not provide licensee with adequate notice of the allegations other than the one pertaining to the ISO, we reverse and remand the board's order.
I. BACKGROUND
Licensee practiced "integrative and functional" medicine, which is an integration of traditional Western medical practice with alternative medicine, and offered cosmetic and medical services at her clinic in Lake Oswego. In December 2011, the board began investigating licensee after receiving a patient complaint. The next year, the board became aware of a federal Drug Enforcement Administration (DEA) controlled substances investigation into licensee's clinic and received a second complaint about her.[2] The board's investigation included concerns that, among other things, licensee improperly dispensed controlled substances, inadequately charted patient care, and provided substandard care to her patients. Unsatisfied by licensee's responses to its concerns, the board asked licensee to stop practicing medicine until it completed its investigation and, on June 7, 2012, licensee agreed to the ISO, which provided that she would withdraw from the practice of medicine.
As the board continued its investigation, licensee remained involved in the clinic. In her view, informed by the advice of counsel, she had a "duty to not abandon her patients," so she hired physicians and staff to continue to provide patient care, and any contact between her and clinic staff or patients was limited to providing "continuity of care." The board finished its investigation and provided licensee with a complaint and notice of proposed disciplinary action against her under ORS 677.205.
The complaint's allegations were divided into two parts. The first part recited alleged violations of ORS 677.190 as follows:
"The Board proposes to take disciplinary action by imposing up to the maximum range of potential sanctions identified in ORS 677.205(2), to include the revocation of license, a $10,000 fine, and assessment of costs, pursuant to ORS 677.205 against Licensee for violations of the Medical Practice Act, to wit: ORS 677.190(l)(a) unprofessional *121 or dishonorable conduct, as defined by ORS 677.188(4)(a), ORS 677.188(4)(b), ORS 677.188(4)(c) ; ORS 677.190(13) gross or repeated negligence in the practice of medicine; ORS 677.190(17) willfully violating any rule adopted by the board, board order, or failing to comply with a board request; ORS 677.190(23) violation of the federal Controlled Substances Act; and ORS 677.190(24) prescribing controlled substances without a legitimate medical purpose, or prescribing controlled substances without following accepted procedures for examination of patients, or prescribing controlled substances without following accepted procedures for record keeping."
Thereafter, the complaint set out more than a dozen factual allegations. The complaint first alleged, in Paragraph 3.1, that licensee
"violated the terms of her ISO by engaging in the active practice of medicine after the ISO went into effect. Subsequent to June 7, 2012, Licensee has on repeated occasions managed and directed patient care at her clinic, to include directing clinic staff to order lab work, to perform certain tasks in regard to patient care, and to issue or refill prescriptions for patients."
The complaint then included three specific instances alleged to be violations of the ISO. For example:
"a. Patient A presented at the clinic on July 25, 2012 for laser and Botox treatment. Patient A * * * had suffered a sunburn. A staff person was explaining possible complications of undergoing laser treatment with a sunburn when Licensee entered the examination room, dismissed the concerns of the staff person, and told the staff person to conduct the laser treatment that day. Patient A subsequently underwent Botox treatment. Licensee came into the examination room and directed the attending health care provider to move the needle to a different location on Patient A's face."
In the other two factual allegations, the board alleged that licensee told an unspecified patient in a text message exchange that the patient could modify her Zoloft dosage by a half tablet at night and that licensee text-messaged with clinic staff about the delivery of medical care to patients and requests that clinic staff refill prescriptions for two patients.
The complaint also specified multiple interactions with patients (Patients B through J; Paragraphs 3.2 through 3.10) that were alleged to be grounds for discipline. For example, the board alleged:
"3.3 Beginning in March of 2011, Licensee treated Patient C, a 39 year old female with a history of overusing narcotic pain medications, with Adderall, 20 mg, twice daily and continued this treatment until February of 2012. The chart notes do not provide the medical indications to support this treatment regimen, nor how Patient C responded to the treatment."
In another example, the board alleged:
"3.5 Licensee began to treat Patient E, a 16 year old female, with Phentermine (Schedule IV), 15 mg, 1 - 2 daily, in December 2010 without explanation in the chart. Patient E was 57 inches tall and weighed 155 pounds (body mass index of 24.3). There is no documentation of weight loss. Licensee initiated as series of HCG weight loss injections in May of 2011, without support documentation. In July, 2011, Licensee began to treat Patient E with Adderall 10 mg, twice daily, and continued this treatment through March of 2012. Licensee failed to document the medical indications for these treatments, nor how Patient E responded to justify continuation of these treatments."
In addition to alleged conduct as to specified patients, the board alleged:
"3.11 Licensee wrote prescriptions of hydrocodone & acetaminophen (Vicodin, Schedule III) and oxycodone (OxyContin, Schedule II) for several members of her office staff without medical justification. Licensee had these staff persons fill those prescriptions at a local pharmacy and bring those medications to her clinic for storage and later dispersal to patients that required pain medication. Licensee failed to have these medications stored in a locked container and failed to maintain *122 accurate dispensing logs. Licensee's conduct violated the Federal Controlled Substances Act.
" * * * * *
"3.13 Licensee does not have a primary care physician. Licensee's office records reflect that she has engaged in a pattern of conduct in which she has received a series of self-prescribed testosterone injections (Schedule III) at her office.
"3.14 Licensee provided substandard medical care to certain family members, failed to coordinate their care with other healthcare providers, and failed to appropriately chart the care she provided to her family members."[3]
Licensee requested a contested case hearing, which was conducted before an administrative law judge (ALJ). At the hearing, the board proceeded on the bases alleged in the complaint (and in licensee's view, on grounds not contained in the notice) and the ALJ issued a proposed final order, determining that licensee violated most of the statutory bases alleged in the complaint. The ALJ determined specifically that licensee willfully violated the ISO and therefore violated ORS 677.190(17) ; prescribed controlled substances without following proper procedures for record keeping, ORS 677.190(24) ; by deviating from or breaching the standard of care, engaged in unprofessional or dishonorable conduct, ORS 677.190(1)(a) ; and, by deviating from or breaching the standard of care, committed gross negligence or repeated acts of negligence in the practice of medicine, ORS 677.190(13). The ALJ also concluded that the notice was deficient as to the allegations that licensee violated ORS 677.190(23), which is grounds for discipline when a licensee violates the federal Controlled Substances Act, and violated ORS 677.190(24) by prescribing controlled substances without a legitimate medical purpose or without following accepted procedures for patient examination.[4] Licensee filed more than a hundred exceptions to the proposed order, many of which were relevant to the issues of whether the notice complied with ORS 183.415(3), which we address here on review. The board concluded that those exceptions lacked merit, adopted the ALJ's proposed order, and issued the final order. We set out the board's conclusions in greater detail below. Licensee seeks judicial review of that order.
II. ANALYSIS
A. Legal Framework for Adequate Notice for Disciplinary Action
As a medical doctor, licensee is governed by provisions in ORS chapter 677, and the Oregon Medical Board has the authority to enforce those provisions and exercise general supervision over the practice of medicine within Oregon. ORS 677.265(1)(c). That authority includes the discipline of licensees when the board has found violations of "one or more the grounds" set out in ORS 677.190. ORS 677.205. That statute provides, in relevant part:
"The Oregon Medical Board may refuse to grant, or may suspend or revoke a license to practice for any of the following reasons:
"(1)(a) Unprofessional or dishonorable conduct.
" * * * * *
"(13) Gross negligence or repeated negligence in the practice of medicine or podiatry.
" * * * * *
"(17) Willfully violating any provision of this chapter or any rule adopted by the board, board order, or failing to comply *123 with a board request pursuant to ORS 677.320.
" * * * * *
"(23) Violation of the federal Controlled Substances Act. [ 21 USC § 801 et seq. ]
"(24) Prescribing controlled substances without a legitimate medical purpose, or prescribing controlled substances without following accepted procedures for examination of patients, or prescribing controlled substances without following accepted procedures for record keeping."
As for ORS 677.190(1)(a), "[u]nprofessional or dishonorable conduct" is defined by ORS 677.188(4) :
" 'Unprofessional or dishonorable conduct' means conduct unbecoming a person licensed to practice medicine or podiatry, or detrimental to the best interests of the public, and includes:
"(a) Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession or any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public or any conduct, practice or condition which does or might adversely affect a physician's ability safely and skillfully to practice medicine or podiatry;
"(b) Willful performance of any surgical or medical treatment which is contrary to acceptable medical standards; and
"(c) Willful and repeated ordering or performance of unnecessary laboratory tests or radiologic studies; administration of unnecessary treatment; employment of outmoded, unproved or unscientific treatments; failure to obtain consultations when failing to do so is not consistent with the standard of care; or otherwise utilizing medical service for diagnosis or treatment which is or may be considered inappropriate or unnecessary."[5]
ORS 677.200 requires the board in a contested case to comply with the provisions of the Oregon Administrative Procedures Act (APA). The APA includes ORS 183.415(3), which provides that a notice must have, as relevant here:
"(c) A reference to the particular sections of the statutes and rules involved; [and]
"(d) A short and plain statement of the matters asserted or charged[.]"
A licensee is "also entitled to notice required by the Fourteenth Amendment." Murphy , 270 Or. App. at 628, 348 P.3d 1173 (citing Campbell v. Bd. of Medical Exam. , 16 Or. App. 381, 386, 518 P.2d 1042 (1974) ). "The purpose of requiring notice 'is primarily to allow [the licensee] an opportunity to prepare an adequate defense.' " Id . (quoting Campbell , 16 Or. App. at 387, 518 P.2d 1042 ).
Two of our cases have explained those notice requirements: Villanueva v. Board of Psychologist Examiners , 175 Or. App. 345, 27 P.3d 1100 (2001), adh'd to on recons. , 179 Or. App. 134, 39 P.3d 238 (2002), and Murphy , 270 Or. App. 621, 348 P.3d 1173. In Villanueva , the Board of Psychologist Examiners notified the licensee that the board intended to take disciplinary action, alleging that the licensee had committed six specified ethical violations. In its final order, the board concluded that the licensee had not violated any of the six ethical principles identified in the notice but determined that the licensee had violated an ethical principle related to informed consent that had never been mentioned until the hearing. Id . at 353, 27 P.3d 1100. On judicial review, the licensee asserted that the notice did not include a "reference to the particular sections of the statutes and rules involved" as required by what is now ORS 183.415(3)(c).[6] Id . at 347, 27 P.3d 1100. The board defended its notice by asserting that it contained a clear and detailed statement of the matters charged and was sufficiently detailed to allow the preparation of a defense and, therefore, was adequate for purposes of ORS 183.415's requirements. Id . at 355, 27 P.3d 1100.
*124 Concluding that the notice was inadequate, we made two points. First, ORS 183.415(3)(c)"could not be clearer" in requiring an administrative body to provide a " 'reference to the particular sections of the statutes and rules involved,' " which the board's notice did not do. Id . at 356, 27 P.3d 1100. Second, we rejected the board's alternative argument that the notice "substantially complied" with the notice requirements and that that was "good enough." The statute requires compliance, not "substantial compliance," and even if substantial compliance was all that was required, because the board's communications and the notice tied the issue of consent to two specified ethical principles (on which the board ultimately did not rely), the licensee "reasonably could have understood that the question of consent was limited to those allegations." Id . at 358, 27 P.3d 1100.
More recently, in Murphy , we decided another notice challenge. The board, alleging that the licensee, a cardiologist, was on call for a hospital when he went out to dinner and drank one or two glasses of wine, brought a complaint and notice against him that asserted that the licensee violated the hospital's policy prohibiting that conduct. 270 Or. App. at 624, 348 P.3d 1173. The board alleged that he therefore violated " ORS 677.190(1)(a) [,] unprofessional or dishonorable conduct, as defined by ORS 677.188(4)(a)." At the licensee's hearing, the board proceeded on the basis alleged in the notice-that violating the hospital's policy was unprofessional or dishonorable conduct-and that drinking alcohol while on call violated an underlying ethical obligation. Id . In its final order, however, the board did not discipline the licensee for violating the hospital's policy but determined that the hospital's policy was a reflection of a recognized community ethical standard and that the licensee had violated that community standard. Id . at 627, 348 P.3d 1173. On judicial review, we agreed with the licensee's assertion that the notice did not comport with the notice requirements of ORS 183.415(3).
We began by noting that ORS 677.188(4)(a) sets out three alternative types of conduct or practice that constitute "unprofessional or dishonorable conduct":
"[1] Any conduct or practice contrary to recognized standards of ethics of the medical or podiatric profession or [2] any conduct or practice which does or might constitute a danger to the health or safety of a patient or [3] the public or any conduct, practice or condition which does or might adversely affect a physician's or podiatric physician and surgeon's ability safely and skillfully to practice medicine or podiatry[.]"
Id . at 630, 348 P.3d 1173 (brackets and emphases in Murphy ). Given that the board's reference to ORS 677.188(4)(a) generally could not have given the licensee "unequivocal notice" that the board intended to proceed on the basis that he violated the specific type of conduct "contrary to recognized standards of ethics of the medical * * * profession," we reasoned that, "[a]t best, the board's reference to [ ORS 677.188(4)(a) ] could only have given licensee notice that the board might proceed on that basis, as opposed to one of the other two bases in the statute, both of which could have also applied to a physician drinking while on call." Id . (emphasis in original). Further, we concluded that the licensee reasonably understood the allegations to mean that the board would proceed on the basis that the licensee's violation of the hospital's drug-free policy was what constituted unprofessional or dishonorable conduct. Id . In concluding that the notice was inadequate and deprived the licensee of "the opportunity to prepare a defense," we rejected the board's contention that the factual allegations were sufficient to inform the licensee which of the ORS 677.188(4)(a) grounds it was proceeding under. Id . at 631, 348 P.3d 1173.
Thus, Villanueva and Murphy instruct that ORS 183.415 and due process concerns require that, in order for a licensee to reasonably understand the matters asserted by an agency and to prepare an adequate defense, a notice of disciplinary action must refer to the statute or rule upon which it relies as a ground to impose discipline and must indicate which statutory ground the board will -not might -press at the contested case hearing. When the board has alleged more than one statutory ground for discipline, *125 it may not rely only on factual allegations to notify the licensee of the statutory ground on which it will proceed.
With that legal framework in mind, licensee's arguments are generally as follows: (1) the notice was inadequate because some of the allegations therein failed to include the statute or rule that the board ultimately relied on to find grounds for discipline, as in Villanueva ; (2) the notice was inadequate because it failed to identify the specific bases for "unprofessional or dishonorable conduct," ORS 677.190 (1)(a), as defined by ORS 677.188(4), as in Murphy ; and (3) the notice was inadequate because it did not identify which subsection of ORS 677.190 each factual allegation fell under, an argument that also relies on our holding in Murphy .[7] The crux of the board's response is that its notice is distinguishable from the notices in cases cited by licensee because the rules or statutes on which it relied were "peripheral" to its determination and the factual allegations in the notice adequately informed licensee of the grounds on which it would proceed at the contested case hearing. As we explain below, except for the determination that licensee violated the ISO, the notice was inadequate because the board improperly relied on administrative rules that were not provided in the notice, and the notice was deficient because it did not inform licensee on which statutory grounds the board would proceed to establish violations.
B. Willfully Violating the ISO, ORS 677.190(17)
As noted, during the course of the board's investigation, licensee and the board entered into the ISO. Under the ISO, licensee agreed to the following terms:
"3.1 Licensee voluntarily withdraws from the practice of medicine and her license is placed in Inactive status pending the completion of the Board's investigation into her ability to safely and competently practice medicine.
"3.2 Licensee understands that violating any term of this Order will be grounds for disciplinary action under ORS 677.190(17)."
And, as noted, the board alleged that licensee "violated the terms of her ISO by engaging in the active practice of medicine after the ISO went into effect" on June 7, 2012. The board further alleged three factual circumstances when licensee engaged in the practice of medicine because she "on repeated occasions managed and directed patient care at her clinic, to include directing clinic staff to order lab work, to perform certain tasks in regard to patient care, and to issue or refill prescriptions for patients."
At the hearing, licensee denied that she managed or directed patient care after June 7, 2012. In her view, she either acted as a medical assistant or she was following the advice of counsel by providing only "continuity of care." She denied any factual allegations inconsistent with those premises. That is, as to the allegation that she directed and managed the care of Patient A by ordering a laser treatment and directing Botox injections, her defense was to deny that allegation as a factual matter. As to the Zoloft dosage change, licensee's argument was that the patient was merely informing her of the dosage change, for which she instructed her staff to document. And, as to the allegation that licensee directed and managed patient care by communicating with clinic staff how patients should be treated or which tests should be ordered, licensee mainly contended that her directives were not new but that she was *126 instructing staff to pay attention to charting instructions that existed before the ISO went into effect. In rejecting those arguments, the ALJ credited the staff members' testimony challenging licensee's version of events and found that licensee was not credible because her testimony was "internally inconsistent," "non-responsive," or "evasive."
Having considered those findings, the ALJ was not persuaded by licensee's attempt to place her conduct "under the expansive umbrella of 'ensuring continuity of care.' " The ALJ cited ORS 677.085 as an explanation of what constitutes the "practice of medicine"[8] and determined that licensee's actions constituted "managing and directing" patient care and that licensee thus engaged in "the practice of medicine, pursuant to ORS 677.085(4)." The ALJ further concluded that licensee "willfully violated the ISO and the Board has proven violation[s] of ORS 677.190(17)." Licensee took exception to those findings and conclusions, asserting that the board's failure to identify ORS 677.085 in the notice was contrary to what we held, in Villanueva and Drayton v. Dept. of Transportation , 186 Or. App. 1, 62 P.3d 430 (2003), vac'd on other grounds , 341 Or. 244, 142 P.3d 72 (2006), was required under ORS 183.415(3). The board disagreed, explaining that the exception lacked merit because the notice alleged that licensee violated the ISO "by engaging in the active practice of medicine after the ISO went into effect," and the ALJ "concluded that [licensee] engaged in the practice of medicine, as defined in ORS 677.085(4) after she signed the ISO." Accordingly, the board adopted the ALJ's findings and conclusion.
On review, licensee challenges the board's explanation, asserting that the failure to include a reference to ORS 677.085"cannot be rectified by quoting and relying on the statute in the final order" and reprising her argument that the board cannot rely on a statute that it is not identified in the notice for its conclusion. The board responds that ORS 677.085(4) defines the practice of medicine in "general terms" (the "practice of medicine" means to "diagnose, cure or treat in any manner, or by any means," illness disease, or injury) and citation of that statute was unnecessary for the board to arrive at its conclusion that licensee engaged in the practice of medicine. To the extent the board reasoned that the ALJ's citation of ORS 677.085 addressed licensee's notice challenge, we agree with licensee that the board's explanation for why the notice was adequate was incorrect. However, reviewing for legal error, Murphy , 270 Or. App. at 622, 348 P.3d 1173, we agree with the board that the conclusions about licensee's violation of the ISO did not rely on ORS 677.085 and the notice adequately informed licensee of the ground for discipline.
First, we note that licensee could reasonably understand that the allegations pertaining to the violation of the ISO were alleged to be violations of ORS 677.190(17), which provides that a licensee is subject to discipline for "[w]illfully violating any * * * board order." The ISO itself said that "violating any term of this Order will be grounds for disciplinary action under ORS 677.190(17)," and the notice's allegation that licensee violated the board's order tracks the ground for discipline provided under that statutory provision.
*127 Second, we note that ORS 183.415(3)(c) requires a "reference to the particular sections of the statutes and rules involved ." In Drayton , the Department of Transportation sent the petitioners a notice that they had violated various provisions of the Oregon Motorist Information Act (OMIA), ORS 377.700 to 377.840, by posting an unpermitted outdoor advertising sign visible from the state highway. 186 Or. App. at 10-11, 62 P.3d 430. Though the notice did not mention any administrative rules, the department relied on the definition of "premises" in its administrative rule, OAR 734-059-0005, to establish a violation of the OMIA. Addressing the petitioners' challenge that the notice failed to include a "reference to the particular * * * rule[ ] involved," ORS 183.415(3)(c), we observed that that subsection was phrased broadly and, looking at the dictionary definition of the term "involved," we concluded that " 'involved' implicates at least some element of substantial relevance." 186 Or. App. at 10-11, 62 P.3d 430. We held that the rule on which the department relied, which was not mentioned in its notice to the petitioners, was instrumental to the department's conclusions that the rule was violated and, therefore, that the notice to the petitioners was inadequate. Id . at 12-13, 62 P.3d 430.
Here, the determination that licensee violated the ISO presents a case different from Drayton . The board determined that licensee violated ORS 677.190(17) because it found that she violated the ISO, not because she violated an underlying provision in ORS chapter 677 or an administrative rule. Although the board cited ORS 677.085, the board did not rely on any of that provision's terms for definitional purposes nor does it appear that it relied on any interpretation of the statute to derive a meaning for the "practice of medicine." Nor did it need to. The notice alleged that licensee violated the ISO, in which she agreed to withdraw from the "practice of medicine," because she engaged in the active practice of medicine by "managing and directing" patient care and specified ways in which the licensee did so. That allegation was sufficient to inform licensee that managing and directing patient care in the ways alleged in the notice constituted the "practice of medicine," and that is the basis on which the board determined licensee violated the ISO. Although licensee disputed that her conduct violated the ISO, those disputes focused on contesting the board's factual assertions and the credibility of the board's witnesses; her arguments did not hinge how the practice of medicine is defined and did not implicate the provisions of ORS 677.085 or the meaning of "practice of medicine" in the ISO. ORS 677.085, although cited by the board, lacked "substantial relevance" to the board's determinations that licensee violated her agreement with the board. Drayton , 186 Or. App. at 11, 62 P.3d 430.
Licensee also contends that the second and third factual allegations were inadequate because they were not "a short and plain statement of the matters asserted or charged" as required by ORS 183.415(3)(d). As to the second factual allegation, licensee argues that the failure of the notice to identify the patient who asked by text message whether she could change her medication dosage was too indefinite to give licensee notice of how the board would proceed with that allegation. We disagree; there are sufficient facts in that allegation-a specific date and the circumstances of the exchange-to constitute a "short and plain statement of the matters asserted." Similarly, we reject licensee's argument that the notice's failure to identify the "health care providers" in the allegation rendered that allegation inadequate.
In sum, we conclude that the notice pertaining to licensee's violation of the ISO complied with ORS 183.415(3) and allowed her to prepare her defense.
C. Prescribing Controlled Substances Without Following Accepted Procedures for Patient Examination or Record Keeping, ORS 677.190(24)
ORS 677.190(24) provides as a ground for discipline:
"Prescribing controlled substances without a legitimate medical purpose, or prescribing controlled substances without following accepted procedures for examination of patients, or prescribing controlled substances without following accepted procedures for record keeping."
*128 In its order, the board noted that, except for the allegation that licensee provided substandard care to family members, the notice did not "specify which alleged conduct by [licensee] falls under [ ORS 677.190(24) ]."
The board determined that licensee violated ORS 677.190(24) in two ways. First, the board found that licensee prescribed testosterone injections (a Schedule III controlled substance) to her husband, also a physician, without conducting a physical exam. Licensee asserted that she was merely continuing treatment that had been recommended by her husband's doctors in India. Because the board found credible expert testimony that a "physician must do a thorough history, physical exam, evaluation, and assessment on a patient before continuing any treatment started by another provider, even when the patient is a family member " (emphasis in order), it determined that licensee violated ORS 677.190(24) by prescribing a controlled substance without following accepted procedures for examination of patients.
On review, licensee contends that that determination goes beyond what was asserted in the notice, and we agree. The notice alleged that licensee provided "substandard care" to certain family members and that licensee failed to chart or coordinate with other healthcare providers, yet the board concluded that licensee violated subsection (24), which pertains to the prescription of controlled substances and the accepted procedures for patient examinations and record keeping. Nothing in the allegation could be reasonably understood to convey that the board would proceed on the ground that licensee violated subsection (24).
Second, the board determined that licensee violated ORS 677.190(24) because she violated OAR 847-015-0015, which requires that licensees follow specific practices of maintaining a controlled substances log.[9] Because of the credible testimony of a clinic staff member that licensee's controlled substances log that was available for inspection was incomplete and out-of-date, the board determined that licensee's attempts at maintaining an inventory log for the prescriptions of controlled substances did not conform to the requirements of OAR 847-015-0015. Here, the board relied on the specific provisions of OAR 847-015-0015 to determine that licensee violated the rule and therefore violated ORS 677.190(24). The notice did not refer to the particular rule involved, see ORS 183.415(3)(c), and, therefore, the notice was inadequate. See Villanueva , 175 Or. App. at 356, 27 P.3d 1100.
D. Unprofessional or Dishonorable Conduct, ORS 677.190 (1)(a)
The board determined that licensee engaged in multiple instances of unprofessional or dishonorable conduct, violations of ORS 677.190(1)(a). At the outset, we first address the board's determination that licensee violated OAR 847-015-0010 for prescribing Phentermine to Patients D and E, which, in turn, was deemed a violation of ORS 677.190(1)(a). Licensee asserts that the allegations concerning those patients made no mention of that rule, and, thus, the notice was inadequate under ORS 183.415(3)(c). The allegation concerning Patient E, for example, was as follows:
"3.5 Licensee began to treat Patient E, a 16 year old female, with Phentermine (Schedule IV), 15 mg., 1 - 2 daily, in December 2010 without explanation in the chart. Patient E was 57 inches tall and weighed 155 pounds (body mass index of 24.3). There is no documentation of weight loss. Licensee initiated as series of HCG weight loss injections in May of 2011, without support documentation. In July, 2011, Licensee began to treat Patient E with Adderall 10 mg, twice daily, and continued *129 this treatment through March of 2012. Licensee failed to document the medical indications for these treatments, nor how Patient E responded to justify continuation of these treatments."
The board responds that it was "obvious" that the board intended to rely on "the established BMI standards" for prescribing Phentermine. The board's argument conflicts directly with what we have held ORS 183.415(3) requires. Drayton , 186 Or. App. at 11, 62 P.3d 430 (" ORS 183.415 unambiguously requires that an agency providing notice of charges or claims in a contested case must include a reference to any administrative rules involved" (citing Villanueva , 175 Or. App. at 356, 27 P.3d 1100 ) ). OAR 847-015-0010 provides that a physician may prescribe a Schedule IV controlled substance (in this case, Phentermine) for the purpose of weight reduction only if certain conditions are complied with, such as a patient having a minimum body mass index (BMI) of 30 or a BMI of 27 and excess weight constituting a threat to the patient's health. The board found that the BMI of Patients D and E were below those minimums set out in OAR 847-015-0010 and that, therefore, licensee violated that rule and engaged in "unprofessional conduct." However, the allegations concerning Patients D and E made no mention of that rule. The notice was inadequate with respect to the board's determination of the violations of OAR 847-015-0010.
We turn next to the board's multiple determinations that licensee's failure to chart breached the standard of care, which, in turn, constituted unprofessional or dishonorable conduct. For example, the board determined that licensee's charting was deficient with respect to prescribing Phentermine to Patients D and E, and the board therefore concluded that licensee engaged in unprofessional or dishonorable conduct, ORS 677.190(1)(a). That failure-to-chart determination serves as the basis for many of the board's other determinations of unprofessional or dishonorable conduct: that licensee failed to chart (1) coordination of care with Patient G's treating oncologist; (2) the medical indications for prescribing Adderall to Patient I; (3) the medical indications, progress, or efficacy of prescribing testosterone to Patients B and D; (4) the diagnostic evaluation, medical indications, informed consent, and/or response concerning the prescription of Adderall to Patients B, C, E, and J; (5) licensee's treatment of her husband; and (6) licensee's self-treatment.
In licensee's view, the notice was inadequate as to those determinations because the notice's mere references to ORS 677.190(1)(a) and ORS 677.188(4)(a), (b), and (c), are insufficient. That is, licensee contends that, as we noted in Murphy , "unprofessional and dishonorable conduct" is defined by ORS 677.188(4) and the failure to refer to the particular basis in that definition for each allegation failed to provide her with "unequivocal notice" that the board intended to proceed on the bases that it did. Licensee points out that there are nine separate types of conduct within ORS 677.188(4)'s definition of "unprofessional or dishonorable conduct," and the board's failure to identify which of those nine types of conduct is at issue is contrary to our holding in Murphy . The board responds that we did not end our analysis in Murphy with our observation that the notice failed to provide unequivocal notice that the board intended to proceed on the basis that the licensee violated a recognized standard of ethics under ORS 677.188(4)(a), but that we also considered the specific factual allegations in the notice to determine whether the board provided notice of what it intended to prosecute. In the board's view, in this case, when the factual allegations are considered in tandem with the reference to the ORS 677.190(1)(a) and ORS 677.188(4)(a), (b), and (c), the board's specific factual bases for each violation were identified in the notice. According to the board, "unlike in Murphy , the statutory references together with the factual allegations alerted [licensee] to the various bases on which the board was seeking to discipline her for unprofessional conduct." There are, however, some problems with the board's argument.
First, the board's assertion that Murphy is distinguishable is incorrect. The board's notice in Murphy did, in fact, set out the factual circumstances underlying the alleged violation of ORS 677.190(1)(a) (the petitioner *130 consumed alcohol while on call for the hospital, which had a policy prohibiting that conduct, 270 Or. App. at 629, 348 P.3d 1173 ). What the notice did not do was set out an allegation that that conduct was contrary to a recognized standard of ethics. Further, we rejected the board's argument in that case that, "because the complaint alleged that petitioner's consumption of alcohol while on call was unprofessional or dishonorable conduct, petitioner was on notice that the board would proceed on the ground that his conduct violated medical ethical standards." Id . at 629, 348 P.3d 1173. That rejection of the board's argument depended implicitly on the principle that the board could not rely on a factual allegation to inform the licensee of what part of ORS 677.188(4) the board would proceed under to establish a violation.[10] Here, we conclude that the factual allegations that licensee failed to chart were insufficient to provide notice that the board would determine that licensee violated one of the defined bases for unprofessional or dishonorable conduct set out in ORS 677.188(4).
Second, the board, in its order, never identified what type of misconduct set out in ORS 677.188(4)(a), (b), or (c) rose to the level of unprofessional or dishonorable conduct. Its omissions are telling. That is because it is appears that, in the course of determining violations of ORS 677.190 (1)(a) for failure to chart, the board never settled on one of the bases for unprofessional conduct defined in ORS 677.188(4). Certainly, the board never expressly stated which part of ORS 677.188(4) it was relying on, nor is "failure to chart" or lack of "documentation" set out in ORS 677.188(4) as a ground for unprofessional conduct. Instead, the board determined that licensee violated ORS 677.190(1)(a) because she "breached the applicable standards of care." That, however, is not one of the defined grounds for unprofessional conduct.[11]
*131 The fact that the board made determinations of unprofessional or dishonorable conduct on a ground not defined by statute (or by OAR 847-010-0073 )-the failures to chart deviated from the standard of care-suggests that licensee could not have learned from the notice on what basis the board would discipline her.
Similarly, the notice was also inadequate as to the board's remaining determinations of unprofessional or dishonorable conduct. The board determined that licensee breached the standard of care because she wrote controlled substances prescriptions to clinic staff members for those medications to be used as office stock, yet the allegation did not notify licensee that the board would try to establish that that conduct was unprofessional or dishonorable conduct because she "breached the standard of care." As to Patients B and D, the board determined that licensee's failure to warn of the side effects of testosterone treatments constituted a "breach of the standard of care." And, as to Patient G, the board concluded that licensee failed to engage in coordination of care with that patient's treating oncologist, which was deemed a "breach of the standard of care." Like the failure-to-chart based violations of ORS 677.190 (1)(a), the factual allegations were insufficient to provide notice to licensee that the board would make the determinations that it did.
E. Gross Negligence or Repeated Negligence in the Practice of Medicine, ORS 677.190(13)
For many of the board's determinations that licensee's conduct was unprofessional or dishonorable conduct, ORS 677.190(1)(a), the board also determined that the conduct constituted gross negligence or repeated negligence in the practice of medicine, ORS 677.190(13), because she breached the standard of care. For example, the board determined that licensee's failure to coordinate treatment of Patient G with the patient's oncologist was a "breach of the standard of care" and therefore a violation of both ORS 677.190(1)(a) and ORS 677.190(13). Further, the board determined that some of licensee's conduct-prescribing inadequate dosages of antibiotics to Patient H and lack of adequate follow-up of Patient I's medication regimen-constituted gross negligence but not unprofessional or dishonorable conduct.[12] The board's order recognized that the notice "did not correlate the conduct alleged with specific violations of the Medical Practices Act" and that it is "therefore unknown whether the Board considered the remaining alleged acts to be violations of ORS 677.190(1)(a) (unprofessional or dishonorable conduct), ORS 677.190(13) (gross or repeated negligence), or both." Nevertheless, the order stated that both statutory subsections would be considered when determining whether violations occurred.
To establish the legal framework for those determinations, the order, acknowledging that ORS chapter 677 does not define "gross negligence" or "repeated acts of negligence," resorted to a definition supplied by Black's Law Dictionary 1061 (8th ed. 2004) where "negligence" means the "failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation" and "gross negligence" is defined a "lack of slight diligence or care." To supplement that definition, the board turned to the Supreme Court's decision in Coffey v. Board of Geologist Examiners , 348 Or. 494, 509-10, 235 P.3d 678 (2010), to conclude that "the Oregon Supreme Court has recognized that the standard of care is that of 'a reasonably prudent, careful and skillful practitioner of that discipline in the community or a similar community under the same or similar circumstances' " and that "gross negligence" is "the equivalent of reckless disregard and is negligence of a substantially greater degree than that of ordinary negligence."[13]
*132 Licensee asserts that the board's notice was inadequate with regard to its determinations that licensee's conduct constituted gross negligence or repeated acts of negligence in the practice of medicine because (1) the notice failed to allege whether the board was asserting that the alleged factual conduct was gross negligence or repeated acts of negligence; (2) the notice failed to indicate which of the statutory subsections the board would proceed under to establish a violation-an absence the order itself recognizes; and (3) the notice failed to alert licensee of the legal standard that her conduct was alleged to have violated. The board responds that the specific factual allegations made apparent which statutory provisions were implicated. For example, in the board's view, the allegation that licensee provided "substandard medical care to certain family members" was sufficient to satisfy the notice requirements of ORS 183.415 because that factual allegation was consistent with the board's determination that licensee violated ORS 677.190(13). Moreover, citing Coffey , the board contends that there is no requirement that the notice needed to explain those terms in the notice.
The board's position is unpersuasive. Even if we assume that the board is correct that it was entitled to wait until the contested case proceeding to define gross negligence or negligence, the factual allegations lacked any language indicating that the board would proceed on the basis that the alleged conduct was a violation of ORS 677.190(13). None of the allegations signal that licensee's conduct involved a "substantially greater degree" of negligence, i.e. , gross negligence, or that her conduct was the basis for repeated acts of negligence. Further, the board's factual allegations were extensive, but the factual allegations in and of themselves were insufficient to provide notice as to which-one, some, or all-of the five alleged statutory grounds applied. For example, the notice alleged that licensee provided substandard medical care to family members and the board concluded that that conduct was a violation of ORS 677.190(13). Licensee, however, had no way of knowing from that factual allegation that the alleged conduct would be considered by the board to be a violation of ORS 677.190(13), much less whether that conduct was a "breach of standard of care" to the extent that it constituted "gross negligence" or "repeated negligence."
Similarly, the board alleged that licensee wrote prescriptions for Vicodin and Oxycodone, both controlled substances, for members of her clinic staff for the purpose of using them as office stock. At the conclusion of the paragraph describing that misconduct, the board alleged that the conduct violated the federal Controlled Substances Act. The board determined that that conduct "breached the standard of care" and, thus, the board established a violation of ORS 677.190(13). There is nothing in the allegation that would be reasonably understood by licensee to mean that the board would -rather than might -try to establish at a contested hearing that that conduct was "gross negligence" or "repeated negligence." Further, the lack of an explanation of the basis for why or how that conduct constitutes repeated or gross professional negligence is amplified by the fact that the allegation explains that the conduct is a violation of the federal Controlled Substances Act, and therefore a violation of subsection (23). Because those factual allegations, and the other factual allegations for which the board determined a violation of ORS 677.190(13) had been established, lack any indication that the board would proceed on that basis, we conclude that the notice was inadequate as to that statutory allegation.
III. CONCLUSION
For the foregoing reasons, we reverse and remand the board's order. The board's determination that licensee violated the ISO was supported by adequate notice. However, the remaining grounds for discipline were not properly before the board and cannot be *133 used as a basis to sanction licensee. See Villanueva v. Board of Psychologist Examiners , 179 Or. App. 134, 138, 39 P.3d 238 (2002) (considering the pleading principles of civil and criminal proceedings, the board was limited to deciding the issues that were properly raised in the notice). That is because the lack of adequate notice for those remaining grounds "is prejudicial in and of itself." Id . The board may, on remand, consider the appropriate sanction for violation of the ISO. See id . (because the only issues that were before the board had been resolved, there was nothing left for the board to do on remand).
Reversed and remanded.

ORS 183.415(3) is part of the Oregon Administrative Procedures Act (APA) and requires, as relevant here, that a state agency's notice informing a party of the right to a contested case hearing must include a "reference to the particular sections of the statutes and rules involved," ORS 183.415(3)(c), and a "short and plain statement of the matters asserted or charged," ORS 183.415(3)(d). The Due Process Clause provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

A DEA investigator testified at the contested case hearing, but the testimony was stricken on the grounds that it was irrelevant and unnecessary.

In Paragraph 3.12, the board alleged that licensee altered chart entries in an effort to conceal the care delivered to licensee's patients. That allegation was not proven.

As to the alleged violation of ORS 677.190(23), the ALJ concluded that the notice was deficient because the notice failed to identify and cite the particular sections of the Controlled Substances Act that the board alleged licensee had violated. See Villanueva v. Board of Psychologist Examiners , 175 Or. App. 345, 27 P.3d 1100 (2001), adh'd to on recons , 179 Or. App. 134, 39 P.3d 238 (2002). As to the alleged violation of ORS 677.190(24), the ALJ concluded that the notice was inadequate because the notice did not specifically allege that licensee prescribed controlled substances without a "legitimate medical purpose."

The board has also defined unprofessional conduct by promulgating OAR 847-010-0073(3)(b), which essentially restates ORS 677.188(4)(a), (b), and (c), and includes provisions about fraudulent billing, disruptive behavior, danger to public health, and sexual misconduct and impropriety.

At the time of the decision, the provision was numbered as ORS 183.415 (2)(c), and is now numbered as ORS 183.415(3)(c). All references to that provision are to the current number.

In Murphy , 270 Or. App. at 628, 348 P.3d 1173, in addressing the adequacy of a disciplinary notice, we arrived at a holding that was informed by both the APA statutory requirements and due process. However, to the extent that licensee in this case is raising a separate constitutional challenge, that argument is undeveloped and we do not consider it. See State v. McNeely , 330 Or. 457, 468, 8 P.3d 212, cert. den. , 531 U.S. 1055, 121 S.Ct. 663, 148 L.Ed.2d 565 (2000) (declining to address constitutional arguments that were asserted but undeveloped); Villanueva , 175 Or. App. at 356 n. 6, 27 P.3d 1100 (distinguishing due process and statutory concerns in disciplinary notices); cf. Robin v. Teacher Standards and Practices Comm. , 291 Or. App. 379, 421 P.3d 385 (2018) (applying Mathews v. Eldridge , 424 U.S. 319, 335, 96 S.Ct. 893, 47 L. Ed. 2d 18 (1976), to address a constitutional due process argument regarding the standard of proof required for the revocation of a teaching license separately from the subconstitutional argument raised in Dixon v. Oregon State Board of Nursing , 291 Or. App. 207, 419 P.3d 774 (2018) ).

ORS 677.085 provides:
"A person is practicing medicine if the person does one or more of the following:
"(1) Advertise, hold out to the public or represent in any manner that the person is authorized to practice medicine in this state.
"(2) For compensation directly or indirectly received or to be received, offer or undertake to prescribe, give or administer any drug or medicine for the use of any other person.
"(3) Offer or undertake to perform any surgical operation upon any person.
"(4) Offer or undertake to diagnose, cure or treat in any manner, or by any means, methods, devices or instrumentalities, any disease, illness, pain, wound, fracture, infirmity, deformity, defect or abnormal physical or mental condition of any person.
"(5) Except as provided in ORS 677.060, append the letters 'M.D.' or 'D.O.' to the name of the person, or use the words 'Doctor,' 'Physician,' 'Surgeon,' or any abbreviation or combination thereof, or any letters or words of similar import in connection with the name of the person, or any trade name in which the person is interested, in the conduct of any occupation or profession pertaining to the diagnosis or treatment of human diseases or conditions mentioned in this section."

OAR 847-015-0015 provides:
"Any practitioner dispensing or administering controlled substances from the practitioner's office must have a Drug Enforcement Administration registration indicating the address of that office. The practitioner shall maintain an inventory log showing all controlled substances received, and administered or dispensed. This log shall also list for each controlled substance, the patient's name, amounts used, and date administered or dispensed. This log shall be available for inspection on request by the Oregon Medical Board or its authorized agents. Controlled substances samples are included in this rule."

In some respects, the Murphy notice was superior to the notice in this case because it narrowed "unprofessional or dishonorable conduct" to ORS 677.188 (4)(a). Here, the board did no such narrowing.

At oral argument, the board posited that that standard for unprofessional or dishonorable conduct-deviating or breaching the standard of care-most "logically" connects to ORS 677.188(4)(b), which provides that unprofessional or dishonorable conduct is "[w]illful performance of any surgical or medical treatment which is contrary to acceptable medical standards." At the very least, the requirement that the misconduct must be willful under ORS 677.188(4)(b) makes any connection between that provision and the board's standard tenuous. Certainly, the questionable relation between the two standards indicates that it would have been impossible for licensee to have reasonably understood that the board would use the standard that it did.
We take a moment to explain that, in the board's order, it set out in full the various kinds of conduct that can constitute "unprofessional or dishonorable conduct as defined by ORS 677.188(4), 292 Or. App. at ----. The board then looked to ORS 677.265(1) to inform its determination of the standard of care, which provides that the board may "[a]dopt necessary and proper rules for administration of this chapter including but not limited to:
" * * * * *
"(c) Enforcing the provisions of this chapter and exercising general supervision over the practice of medicine and podiatry within this state. In determining whether to discipline a licensee for a standard of care violation, the Oregon Medical Board shall determine whether the licensee used that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community."
The board noted that in Spray v. Bd. of Medical Examiners , 50 Or. App. 311, 319, 624 P.2d 125, modified on recons. , 51 Or. App. 773, 627 P.2d 25, rev. den. , 291 Or. 117, 631 P.2d 341 (1981), we held that "unprofessional and dishonorable conduct," which is defined in ORS chapter 677, "can only be determined on an individual case basis" through "the testimony of qualified physicians as to justify what is the norm of treatment in the medical community in the particular case and whether the course of treatment actually followed deviates from the norm to the extent that the physician involved may be said to have used 'inappropriate or unnecessary treatment.' "
Spray and ORS 677.265(1)(c), however, do not stand for the proposition that any deviation from the standard of care is unprofessional or dishonorable conduct. Rather, in Spray we decided that establishing an instance of "unprofessional or dishonorable conduct" already defined as "willful and consistent utilization of medical service or treatment which is or may be considered inappropriate or unnecessary," ORS 677.188(4)(c), did not require the board to have promulgated administrative rules to further refine that definition. As for ORS 677.265(1)(c), that provision does not supply an independent definition of "unprofessional or dishonorable conduct," but rather provides that a standard of care violation, under one of the grounds for discipline set out in ORS 677.190, must be informed by whether the "licensee used that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community ." (Emphasis added.)

We are uncertain, and the board does not explain, how, if licensee committed gross negligence by falling below the standard of care for these determinations, that conduct did not also constitute unprofessional or dishonorable conduct given the standard the board applies.

We note that the Supreme Court provided that definition to make the point that it was consistent with the board's preexisting rules defining "negligence" and "gross negligence"-OAR 809-003-0000(15) and OAR 809-003-0000(9) -to address the petitioner's argument that the board's rules were "incomplete" because, although they incorporated the standard of care in the professional geologist's community, it failed to indicate "how the board would determine and apply the community standard in each case." Coffey , 348 Or. at 509, 235 P.3d 678. Here, there were no preexisting statutes or rules defining professional negligence.